STATE of Utah, Plaintiff and Appellee,

v.

Jeffrey Russell FINLAYSON, Defendant and Appellant.

No. 960387–CA.

Court of Appeals of Utah.

April 2, 1998.

Rehearing Denied April 21, 1998.

Robert K. Heineman, Salt Lake City, for Appellant.

Jan Graham and Thomas B. Brunker, Salt Lake City, for Appellee.

Before DAVIS, WILKINS and GREENWOOD.

## OPINION

DAVIS, Presiding Judge.

Jeffrey Russell Finlayson appeals his jury conviction for aggravated kidnaping, a first degree felony, in violation of Utah Code Ann. § 76–5–302 (1995), forcible sodomy, a first degree felony, in violation of Utah Code Ann. § 76–5–403(2) (1995), and rape, a first degree felony, in violation of Utah Code Ann. § 76–5–402 (1995). We reverse defendant's aggravated kidnaping conviction and affirm all other aspects of defendant's conviction.

## FACTS

" 'In reviewing a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict' and recite the facts of this case accordingly." *State v. Scales,* 946 P.2d 377, 379 (Utah Ct.App.1997) (quoting *State v. Dunn,* 850 P.2d 1201, 1205–06 (Utah 1993)).

The victim here was a Japanese student who, at the time of the incident, had been in the United States for approximately ten months and spoke little or no English. Defendant approached the victim on campus at Salt Lake Community College, where they both attended classes. Defendant, who is fluent in Japanese, asked the victim if she would be willing to tutor him in his Japanese studies. Phone numbers were exchanged and the two ultimately set a date for October 5, 1994.

Defendant picked the victim up at her apartment, and they went to dinner. Although their original plan was to study at the school library after dinner, defendant said he had forgotten a needed book and drove to his apartment to retrieve it. When they arrived, defendant asked the victim to come inside to see certain Japanese souvenirs defendant had acquired while in Japan. Once inside, defendant told the victim that the library was about to close and suggested studying at his apartment. They worked on defendant's Japanese writing skills for about an hour.

After they were finished studying, defendant asked the victim if he could kiss her. The victim said, "No." Defendant pulled the victim from the chair in which she was sitting and carried her into his bedroom with both of his arms around her body. Defendant then sexually assaulted the victim.

During the assault, the victim pounded on the floor with her foot, trying to get the attention of the tenant below. In response, defendant told the victim that if she did not stop making noise, she would not be able to go home. The victim tried to escape several times, but was caught by defendant. After one such attempt, defendant handcuffed the victim. Only after she promised to be quiet did defendant take the handcuffs off.

After the assault, defendant took the victim home. While leaving the apartment, defendant tried to put a paper bag over the victim's head so she would not see his address.[1] When the victim refused to wear the

---

1. The victim had, however, secretly taken a letter from defendant's apartment so she would have the address.

bag, defendant placed a jacket over her head. The drive to the victim's apartment lasted about one hour, even though she lived about thirty minutes away. When the victim told defendant that she wanted to die, defendant refused to take her home until she promised not to harm herself. During this time, defendant asked the victim not to report the incident because he had children.

After defendant left the victim at her apartment, Joowon Kim, the victim's boyfriend, came to see her. Kim noticed that something was bothering the victim and when further pressed, the victim told him that defendant had raped her. Kim was very angry with the victim, reminding her that he had told her not to go out with an American. Kim called Scott Yu, a friend of his, to help the two decide what to do. The police were ultimately called, and the victim was taken to the hospital for a Code R examination.

Defendant was charged with rape, aggravated kidnaping, and forcible sodomy. A trial was held in August 1995 at which the jury found defendant guilty of all three counts. Defendant now appeals several aspects of the trial.

### ISSUES

Defendant argues that numerous reversible errors occurred at trial. First, defendant argues that the aggravated kidnaping conviction must merge with the rape and/or forcible sodomy convictions. Second, defendant contends that the trial court erroneously granted the State its sole challenge of one juror for cause and denied one of defendant's, effectively giving the State five peremptory challenges compared to defendant's three. Third, defendant asserts the trial court erred by excluding defendant's expert witness testimony regarding Japanese cultural values. Fourth, defendant argues that there was prosecutorial misconduct during closing argument. Fifth, defendant maintains he received ineffective assistance of counsel. Lastly, defendant argues the verdict should be reversed under the cumulative error doctrine.

### ANALYSIS

#### Merger

■ Defendant argues that, under these facts, aggravated kidnaping is a lesser included offense of rape and forcible sodomy and, therefore, he cannot be separately convicted and punished for the aggravated kidnaping charge. According to defendant, the detention necessary to support the aggravated kidnaping conviction was inherent in the "host crimes" of rape and/or forcible sodomy and, consequently, the aggravated kidnaping conviction merges into the other two convictions.

■ Although defendant did not object below, because he is asserting he was illegally sentenced as a result of the lesser included relationship between the convictions, Rule 22(e) of the Utah Rules of Criminal Procedure permits us to "consider the legality of a sentence even if the issue is raised for the first time on appeal." *State v. Brooks*, 908 P.2d 856, 860 (Utah 1995).

■ A lesser included offense is statutorily defined in section 76–1–402 of the Utah Code:

> (3) A defendant may be convicted of an offense included in the offense charged but may not be convicted of both the offense charged and the included offense. An offense is so included when:
>
> > (a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged. . . .

Utah Code Ann. § 76–1–402(3)(a) (1995). Accordingly, "a defendant may not be convicted of both the offense charged and a lesser included offense." *State v. Wood*, 868 P.2d 70, 89 (Utah 1993).

■ Included offenses are defined as those " 'where the two crimes are "such that the greater cannot be committed without necessarily having committed the lesser." ' " *State v. Shaffer*, 725 P.2d 1301, 1313 (Utah 1986) (citations omitted). If the jury is not required to find any additional elements to convict a defendant of the lesser crime once it has found him guilty of the greater, then the lesser crime is mere surplusage. *See*

*State v. Bradley,* 752 P.2d 874, 877, 878 (Utah 1985); *see also Shaffer,* 725 P.2d at 1313 (stating to avoid merger, "additional facts or separate elements [must be] required to prove" lesser crime after greater crime is proven). The conviction on the lesser crime is disregarded, and the conviction on the greater crime remains unaffected. *See Bradley,* 752 P.2d at 877; *State v. Hill,* 674 P.2d 96, 98 (Utah 1983).

 Whether a greater-lesser relationship exists between two crimes may be determined by comparing the statutory elements of each crime. *See Hill,* 674 P.2d at 97. Under certain circumstances, however, a "secondary test" is required:

> The secondary test is required by the circumstance that some crimes have multiple variations, so that a greater-lesser relationship exists between some variations of these crimes, but not between others. A theoretical comparison of the statutory elements of two crimes having multiple variations will be insufficient. In order to determine whether a defendant can be convicted and punished for two different crimes committed in connection with a single criminal episode, the court must consider the evidence to determine whether the greater-lesser relationship exists between the specific variations of the crimes actually proved at trial.

*Id.* (citation omitted). Because aggravated kidnaping has multiple variations, we must undertake this "secondary test" set forth in *Hill.*

Aggravated kidnaping is committed in numerous ways:

> A person commits aggravated kidnaping if the person intentionally or knowingly, without authority of law and against the will of the victim, by any means and in any manner, seizes, confines, detains, or transports the victim with intent:
>
> (a) to hold for ransom or reward, or as a shield or hostage, or to compel a third person to engage in particular con-

duct or to forbear from engaging in particular conduct; or

> (b) to facilitate the commission, attempted commission, or flight after commission or attempted commission of a felony; or
>
> (c) to inflict bodily injury on or to terrorize the victim or another; or
>
> (d) to interfere with the performance of any governmental or political function; or
>
> (e) to commit a sexual offense as described in Part 4 of this chapter.[2]

Utah Code Ann. § 76–5–302(1) (1995). For some reason, the jury here was instructed as to all variations of aggravated kidnaping, even though the evidence at trial supported only a detention with the intent to facilitate the commission of a felony[3] and/or a detention with the intent to commit a sexual offense. Our analysis therefore focuses on subsections (b) and (e) of section 76–5–302(1).

The elements of rape proved at trial were that defendant (1) had sexual intercourse with the victim (2) without her consent. *See* Utah Code Ann. § 76–5–402(1) (1995). The elements of forcible sodomy proved at trial were that defendant (1) committed sodomy upon the victim (2) without her consent. *See id.* § 76–5–403(2) (1995). The relevant elements of aggravated kidnaping proved at trial were that defendant (1) intentionally (2) detained the victim (3) with the intent (4) to facilitate the commission of the rape and forcible sodomy and that he committed the rape and forcible sodomy. *See id.* § 76–5–302(1) (1995).

The facts show that the aggravated kidnaping, the rape, and the forcible sodomy occurred simultaneously. The victim voluntarily went inside defendant's apartment and willingly stayed there for approximately one hour. Not until defendant pulled the victim from the chair in which she was sitting and carried her directly back to the bedroom to commit the sexual assault did the unwilling detention begin. Thus, while defendant did detain the victim against her will, the deten-

---

2. Part 4 includes both the rape and forcible sodomy charges relevant here.

3. Rape and forcible sodomy are both first degree felonies. *See* Utah Code Ann. §§ 76–5–402(3), –403(3) (1995).

tion began concurrently with the sexual assault. Clearly, the elements of aggravated kidnaping were established by the same or less facts establishing the rape and forcible sodomy.[4] Because the aggravated kidnaping "is established by proof of the same or less than all the facts required to establish" the rape and forcible sodomy, defendant should not have been convicted of the aggravated kidnaping as well as the rape and forcible sodomy. *Id.* § 76–1–402(3)(a) (1995).[5]

■ The State maintains, however, that because proof of aggravated kidnaping requires proof of a detention, an element not specifically set out in the elements of either rape or forcible sodomy, then the aggravated kidnaping conviction cannot merge with the rape or forcible sodomy conviction. Detention, however, is inherent in the crimes of rape and forcible sodomy, and the focus of section 76–1–402(3) is on facts, not elements. Thus, to prove aggravated kidnaping in addition to a host crime, the detention element must be significantly independent of the fact of detention inherent in the host crime.

■ A three-part test has been developed for determining whether a detention or movement of a victim is significantly independent of another crime to justify a separate conviction for kidnaping:

[I]f a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

(a) Must not be slight, inconsequential and merely incidental to the other crime;

(b) Must not be of the kind inherent in the nature of the other crime; and

(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

*State v. Buggs,* 219 Kan. 203, 547 P.2d 720, 731 (1976); *see also Faison v. State,* 426 So.2d 963, 965, 966 (Fla.1983) (adopting *Buggs* test); *cf. State v. Mitchell,* 60 Ohio App.3d 106, 574 N.E.2d 573, 575 (1989) (applying similar test). The Kansas Supreme Court provided a nonexhaustive, illustrative list of examples of when a detention amounts to a kidnaping:

A standstill robbery on the street is not a kidnapping; the forced removal of the victim to a dark alley for robbery is. *The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of seclusion is.* The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is.

*Buggs,* 547 P.2d at 731 (emphasis added).

■ We find the above test useful in determining whether, under the facts of this case, the detention is sufficiently independent of the rape and forcible sodomy to necessari-

---

**4.** The crimes of rape and forcible sodomy require the actual act of nonconsensual sexual intercourse and forcible sodomy. Aggravated kidnaping requires only the intent to commit these crimes.

**5.** This conclusion is logical because, under the facts before us, to hold that a kidnaping occurred would "transform virtually every rape ... into a kidnapping as well. A defendant convicted of both kidnapping and what can be termed a 'host crime' would in many cases receive a significantly heavier sentence than if only the host crime had been charged." *State v. Couch,* 635 P.2d 89, 92 (Utah 1981).

The supreme court in *Couch* held that to sustain both a kidnaping and sexual assault conviction, the prosecutor must show that the detention was "longer than the minimum inherent in the commission of a rape." 635 P.2d at 93. We

note that *Couch* is distinguishable from this case because there, the defendant was charged with kidnaping, as opposed to the aggravated kidnaping charged here. The kidnaping statute in *Couch* specifically provides that the detention must be "for any *substantial period.*" Utah Code Ann. § 76–5–301 (1995) (emphasis added). The aggravated kidnaping statute does not require that the detention be for a substantial period of time. *See* Utah Code Ann. § 76–5–302 (1995). In fact, this court has previously held that section 76–5–302 does not "require the victim be detained or restrained for *any* period of time before the crime of aggravated kidnapping occurs." *State v. Perry,* 899 P.2d 1232, 1242 (Utah Ct.App. 1995). Notwithstanding this difference, the logic of *Couch* is instructive and applicable to the facts before us.

ly support a separate conviction of aggravated kidnaping. We hold that it is not.

First, the facts proven at trial show that the detention was "merely incidental" to the rape and forcible sodomy. *Buggs*, 547 P.2d at 731. The detention began after the victim willingly spent about one hour in defendant's apartment, but then rejected his advances. It ended with the rape, as there is no evidence supporting a conclusion that the victim did not willingly get into defendant's car in order for him to take her home. Second, a detention is clearly inherent in the commission of a rape or forcible sodomy. *See Couch*, 635 P.2d at 93 (stating kidnaping "requires a period of detention longer than the minimum *inherent* in the commission of a rape" (emphasis added)). Lastly, the detention did not have any significance independent of the rape or forcible sodomy in that it neither made those crimes substantially easier to commit nor substantially lessened the risk of detection. We therefore, under the facts of this case, reject the State's argument that aggravated kidnaping is not a lesser included offense of rape or forcible sodomy because it contains an additional element of detention.[6] *Cf. Hill*, 674 P.2d at 97 n. 1 (rejecting State's argument that theft was not lesser included offense of robbery because theft required proof of "purpose to deprive," while robbery did not because "purpose to deprive" is inherent in robbery).

## Jury Selection

Defendant raises two claims of error regarding jury selection. First, defendant maintains that the trial court erred in denying his challenge for cause of Juror Ogata. Second, defendant argues that the trial court erroneously granted the State's challenge for cause of Juror Wight. The State contends that defendant's argument must fail because he has not shown any prejudice. We agree.

"Whether to dismiss a prospective juror for cause is within the sound discretion of the trial court. 'When reviewing such a ruling, we reverse only if the trial court has abused its discretion.'" *State v. Baker*, 884 P.2d 1280, 1281 (Utah Ct.App. 1994) (quoting *State v. Woolley*, 810 P.2d 440, 442 (Utah Ct.App.1991)), *rev'd on other grounds*, 935 P.2d 503 (Utah 1997); *accord State v. Young*, 853 P.2d 327, 343, 344 (Utah 1993). If a defendant believes the trial court erred in failing to dismiss a juror for cause, "in order to preserve the error on appeal, a criminal defendant must exercise a peremptory challenge, if one is available, against the juror unsuccessfully challenged for cause." *State v. Baker*, 935 P.2d 503, 510 (Utah 1997). Even if the trial court has erroneously granted or denied a challenge for cause, however, to "prevail on a claim of error based on the failure to remove a juror for cause, a defendant must demonstrate prejudice, *viz.*, show that a member of the jury was partial or incompetent." *State v. Menzies*, 889 P.2d 393, 398, 400 (Utah 1994).

During jury voir dire, the State listed the witnesses it intended to call during trial. Juror Ogata indicated that she was familiar with one of the State's witnesses. The trial judge then asked Juror Ogata whether she could be fair and impartial regardless of her relationship with the witness. Juror Ogata told the judge that she could not set aside her partiality. The judge asked Juror Ogata again whether she could set aside any biased notions premised upon her knowledge of the witness, to which she responded, "I'm not really sure." Defense counsel timely challenged Juror Ogata for cause. The State opposed the challenge, asserting that it would not have the witness in question testify. Based on the State's assurance that it would not call this witness, the trial court denied defendant's challenge for cause of Juror Ogata and defendant used a peremptory challenge to remove her. The witness did not testify at trial.

Juror Wight indicated that he thought he was familiar with the prosecutor in an adversarial capacity. The prosecutor stated that his office may have handled the matter Juror Wight was referring to, but he had never

---

6. Even if the evidence would support a finding of sufficiently independent detention, because the aggravated kidnaping instruction given the jury was not tailored to the charges or the evidence, there is no way to determine whether the jury found any significant detention independent of that inherent in the host crimes.

handled such matters. Juror Wight was challenged for cause by the State, and the trial court excused him.

Defendant concedes he is unable to show prejudice based solely on the trial court's denial of his challenge for cause of Juror Ogata. Notwithstanding, defendant contends that by erroneously granting the State's challenge and denying defendant's challenge, the State essentially received five peremptory challenges, while defendant received only three, and prejudice is therefore presumed. Defendant cites *Randle v. Allen,* 862 P.2d 1329 (Utah 1993), and *Carrier v. Pro–Tech Restoration,* 909 P.2d 271 (Utah Ct.App.1995), *aff'd,* 944 P.2d 346 (Utah 1997), as support for his position. However, we find these cases inapposite to the case at hand and, albeit novel, defendant's argument mischaracterizes the issues before us. Simply stated, the issue is whether the trial court abused its broad discretion by granting the State's challenge and denying defendant's and, if the trial court did err, whether defendant has shown the prejudice necessary to support a reversal. We hold that defendant has failed to show that, even if the trial court's rulings were erroneous, defendant was prejudiced by the error. Accordingly, defendant's argument fails and we decline to reverse the jury's verdict on this basis.

### Expert Testimony

▮ Defendant argues that the trial court erred by excluding his expert witness's testimony on Japanese cultural values about sexual conduct. Defendant contends that the testimony went to the heart of his defense theory that the victim fabricated the rape in accordance with traditional Japanese cultural values.

▮ "All relevant evidence is admissible.... Evidence which is not relevant is not admissible." Utah R.Evid. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Utah R.Evid. 401. "The admission or exclusion of evidence is for the trial court to determine as an initial matter, and its judg-

ment will be overturned only for an abuse of discretion." *State v. Miller,* 727 P.2d 203, 205 (Utah 1986).

Defendant proffered his expert witness's testimony to the court, explaining the expert would testify that, pursuant to traditional Japanese culture, Japanese women were allowed to have premarital sex. However, because defendant told the victim that he did not want a serious relationship with her, traditional Japanese cultural values, as described by defendant's expert, required the victim to "save face" and fabricate the rape. Defendant argues this testimony supports his defense theory that the victim lied that the sexual intercourse between the two was not consensual.

▮ Pursuant to Rule 401, the expert's testimony must tend to make defendant's theory that the victim lied about having consensual sex with defendant to "save face" more or less probable. Its only relevance, however, is to the credibility of the victim and not to any elements of the crime committed by defendant. "For this kind of evidence to be admissible, the party offering the evidence must lay a sufficient foundation to show the evidence is relevant." *State v. Stewart,* 925 P.2d 598, 600 (Utah Ct.App. 1996). Here, defendant must first have shown that the victim was aware of such Japanese cultural values, and if she was, then defendant must have established that the victim was likely to act in conformity with these values. The trial court recognized defense counsel's foundational flaw and invited him to cross-examine the witness on this issue:

> As far as ... while you are cross-examining ... the victim and asking that question, yes, I would allow that. That would be up to her what she answers to that.
>
> As far as somebody else coming in and saying, "That's the tradition, they're all going to do that," it's in no way admissible, and it's not relevant as far as this case is concerned.

We agree with the trial court. Defendant sought to introduce the evidence and argued that the victim would act in conformity with traditional Japanese cultural values simply

because she is Japanese.[7] We fail to see how this evidence was relevant without the proper foundation. Because defendant did not lay a proper foundation, the evidence was irrelevant and therefore inadmissible. Accordingly, we hold that the trial court did not abuse its discretion in excluding the evidence.[8]

### Prosecutor's Improper Statements During Closing Argument

■■■■ Defendant argues that the prosecutor committed prejudicial error by making three comments unsupported by the evidence. Because defense counsel did not object to the comments when they occurred, defendant must show plain error on appeal. *See State v. Dunn,* 850 P.2d 1201, 1208 (Utah 1993). To establish plain error, defendant must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the [defendant], or phrased differently, our confidence in the verdict is undermined." *Id.* at 1208–09. This court may first address the prejudice element and "[i]f there is no prejudice, we have no reason to reach the other elements of the analysis." *Id.* at 1224.

Defendant identifies three instances in which the prosecutor made improper comments during his closing argument to the jury. The prosecutor first incorrectly stated that defendant testified he had shown the victim a gun.[9] The prosecutor next incorrectly implied that the State had conducted genetic testing on the sperm removed from the victim, thereby forcing defendant to admit to having sexual intercourse with the victim. Lastly, the prosecutor implied the State had received outside information that defendant was "practicing and honing his story."

■■■■ We must undertake a two-step test to determine whether the prosecutor's improper statements during closing arguments

mandate a reversal. *See State v. Troy,* 688 P.2d 483, 486 (Utah 1984). This court will "examine[ ] first whether the prosecutor has called the jury's attention to matters the jury would not be justified in considering." *State v. Span,* 819 P.2d 329, 335 (Utah 1991); accord *State v. Boyatt,* 854 P.2d 550, 555 (Utah Ct.App.1993). If this first step is met, then we will determine "whether, under the circumstances of the particular case, there was a probability that the jurors were influenced by the prosecutor's remarks." *Span,* 819 P.2d at 335; accord *Boyatt,* 854 P.2d at 555.

Step two is more difficult and involves a consideration of the circumstances of the case as a whole. In making such a consideration, it is appropriate to look at the evidence of defendant's guilt.

"If proof of defendant's guilt is strong, the challenged conduct or remark will not be presumed prejudicial." Likewise, in a case with less compelling proof, this Court will more closely scrutinize the conduct. If the conclusion of the jurors is based on their weighing conflicting evidence or evidence susceptible of differing interpretations, there is a greater likelihood that they will be improperly influenced through remarks of counsel. Indeed, in such cases, the jurors may be searching for guidance in weighing and interpreting the evidence. They may be especially susceptible to influence, and a small degree of influence may be sufficient to affect the verdict. Counsel is obligated in such cases to avoid, as far as possible, any reference to those matters the jury is not justified in considering.

*Troy,* 688 P.2d at 486–87 (citation omitted).

Here, the prosecutor improperly called to the jury's attention matters that, even if true, were not properly before the jury. Therefore, step one is met. However, a reversal is not mandated under step two. While the prosecutor did call to the jury's attention

---

7. Indeed, during the colloquy with the court, trial counsel stated "the behavior of young Japanese women in the United States is capable of being reduced to basically a pattern."

8. We do not mean to imply, by our treatment of this issue, that we necessarily accord credibility

to defendant's expert's description of traditional Japanese cultural values.

9. Defendant only testified that he told the victim he had worked as a security guard and, at that time, carried a gun.

matters not in evidence, there was sufficient proof of defendant's guilt through the testimony of both defendant and the victim.[10] Accordingly, we are not convinced that the jury was sufficiently influenced by the improper remarks of the prosecutor and, therefore, defendant has not established the prejudice necessary to warrant a reversal.

### Ineffective Assistance of Counsel

■■■ Defendant raises numerous instances in which he claims he received ineffective assistance of counsel. To be successful on this claim, defendant "must [first] show that his trial counsel's performance was deficient, in that it 'fell below an objective standard of reasonableness.'" *State v. Winward,* 941 P.2d 627, 635 (Utah Ct.App.1997) (quoting *Strickland v. Washington,* 466 U.S. 668, 687–88, 693, 104 S.Ct. 2052, 2064, 2067, 80 L.Ed.2d 674 (1984)). Once that is established, defendant must show that "there is a 'reasonable probability' that the result would have been different" absent the deficient performance. *State v. Hall,* 946 P.2d 712, 719 (Utah Ct.App.1997) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). Furthermore, "[i]n evaluating defense counsel's strategy under an ineffective-assistance analysis, 'we give trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis supporting them.'" *Id.* at 719–20 (quoting *State v. Crosby,* 927 P.2d 638, 644 (Utah 1996)).

### 1. Failure to Raise Merger Issue

Defendant contends that his trial counsel was ineffective for failing to raise the merger issue before the trial court. However, based upon our resolution of this issue, defendant's argument is moot.

### 2. Failure to Object to Prosecutor's Closing Statement

■■■ Defendant argues that he did not receive effective assistance of counsel based on his trial counsel's failure to object to the prosecutor's improper statements. This court previously held that a trial counsel's failure to object to a prosecutor's closing argument did not satisfy the prejudice prong of the ineffective assistance of counsel test. *See Winward,* 941 P.2d at 635. The court stated, "If appellant's counsel had objected, the trial court would have had the opportunity to issue a curative instruction, which is ordinarily presumed on appeal to be effective." *Id.* "Thus, even if the objection had been interposed, we cannot conclude the outcome would have been different." *Id.* We hold that the reasoning in *Winward* is applicable here and therefore reject defendant's claim of ineffective assistance of counsel on this basis.

### 3. Failure to Procure a Certified Transcript

■■■ Defendant claims that trial counsel was ineffective because he failed to procure a certified transcript of the preliminary hearing. Because he did not have a certified transcript, he was unable to refer to the transcript of the preliminary hearing during his cross-examination of the victim. Defendant claims that this deficiency prevented trial counsel from impeaching the witness by emphasizing the inconsistencies between the victim's testimony at the preliminary hearing and at trial. We reject this argument because, notwithstanding trial counsel's inability to refer to the preliminary hearing transcript, he was not prohibited from cross-examining the victim regarding her inconsistencies. *Cf. State v. Moton,* 749 P.2d 639, 644 (Utah 1988) (discussing right to confront and cross-examine adverse witness).

### 4. Defendant's Prior Dealings with Officer Ross

■■■ During his examination of defendant, trial counsel asked defendant if he had

---

**10.** The evidence showed that defendant initially denied having sexual intercourse with the victim, only to later change his story. Both defendant and the victim testified that she told him "no" several times before defendant sexually assaulted her. Both testified regarding the handcuffs, although defendant claimed he put trick handcuffs on the victim only as a joke and before the sexual assault. Defendant was unable to produce the trick handcuffs at trial.

ever seen Officer Ross [11] before. Defendant responded that he had. On appeal, defendant claims that his trial counsel was ineffective for eliciting the information. However, even if this question was improper, the question was so trivial that there is not a " 'reasonable probability' that the result would have been different" absent the question. *Hall*, 946 P.2d at 719 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068).

### 5. Failure to Request Voir Dire on Jurors' Religious Sentiments

Defendant argues that his trial counsel was ineffective by failing to request that the trial court voir dire the jury regarding their religious sentiments. Defendant contends that because he is a "former L.D.S. missionary who drinks, committed adultery, and engages in premarital sexual relations with multiple partners," certain jurors having an L.D.S. affiliation may have been biased against him from the outset and should have been removed for this reason.

While defendant's theory may have merit, it is also reasonable that trial counsel had a legitimate strategy for not questioning the jury panel on this issue. It is possible that trial counsel believed that a juror who was a member of the L.D.S. church may deem defendant more credible because they were members of the same "flock." "Counsel's performance will not be deemed deficient unless no conceivable tactical basis exists for counsel's actions." *State v. Saunders*, 893 P.2d 584, 592 (Utah Ct.App.), *cert. granted*, 910 P.2d 425 (Utah 1995). Thus, because we find that trial counsel may have had a legitimate tactical reason for not questioning the jury regarding these issues, we reject defendant's argument. *See id.* (holding trial counsel may have had legitimate tactical reason for not removing prosecutor's cousin from jury).

### 6. Failure to Procure a Korean Interpreter

Defendant claims that trial counsel should have insisted on using a Korean interpreter for Joowan Kim. Defendant argues that Kim had such a language barrier that an effective cross-examination without an interpreter was impossible. After reviewing Kim's testimony, however, we conclude that Kim demonstrated an ability to understand the questions and answer them appropriately. The fact that trial counsel did not question Kim further does not indicate the necessity of an interpreter, but was most likely because Kim did not know much more than what he testified to.

Furthermore, other than his own speculation, defendant has failed to show what further information a more extensive cross-examination would have elicited from Kim. Because defendant's claim essentially attacks trial counsel's line of questioning of Kim, and "[t]he decision of whether to pursue a certain line of questioning is entrusted to the judgment of counsel," *Fernandez v. Cook*, 870 P.2d 870, 876 (Utah 1993), we reject defendant's ineffective assistance of counsel claim on this basis.

### 7. Failure to Hire a Japanese Language Expert

Defendant also argues that trial counsel's performance was deficient in that he failed to hire a Japanese language expert to testify about the possible differences of the meaning of the Japanese words used by the victim the night of the assault. Notwithstanding, defendant has failed to show this court that a Japanese language expert would have been able to make the necessary distinctions, and his argument thereby amounts to nothing more than mere speculation.[12] We therefore reject defendant's argument.

### 8. Failure to Raise Victim's Recent Sexual Intercourse

Lastly, defendant contends that trial counsel was deficient in not raising the issue of the victim's recent sexual intercourse with another, which was documented on the Code R examination. This information, defendant

---

**11.** Officer Ross is a Salt Lake City Police officer who had investigated the victim's allegations.

**12.** It is difficult to imagine how a language expert would explain defendant's apparent inability to understand the word "no."

argues, would have further supported his theory that the victim followed traditional Japanese cultural values concerning sexual conduct. Because we held *supra* that the evidence regarding traditional Japanese cultural values was irrelevant, we deem defendant's argument meritless.

## Cumulative Error

Defendant argues that the combination of errors present at trial require reversal under the cumulative error doctrine, which provides that "this court 'will reverse only if "the cumulative effect of the several errors undermines our confidence ... that a fair trial was had." ' " *State v. Alonzo,* 932 P.2d 606, 617 (Utah Ct.App.), *cert. granted,* 940 P.2d 1224 (Utah 1997) (citations omitted). We find that our determination of the issues demonstrates either no error or harmless error. Accordingly, our confidence that defendant had a fair trial has not been undermined, and we decline to reverse based on the cumulative error doctrine.

## CONCLUSION

Because the aggravated kidnaping conviction was proven by less than all the facts required to prove or inherent in the crimes of rape and forcible sodomy, the aggravated kidnaping conviction is reversed, and the trial court's sentence for the same is vacated. Because defendant has not demonstrated the necessary prejudice, we hold that the trial court did not abuse its discretion in granting the State's juror challenge for cause and denying defendant's challenge for cause. We also hold that the trial court did not abuse its discretion by excluding testimony from defendant's expert witness. Next, we conclude that defendant was not sufficiently prejudiced by the prosecutor's improper remarks during closing arguments to warrant a reversal. We also hold that defendant's claim of ineffective assistance of counsel on the basis of his trial counsel's failure to raise the merger issue is moot and reject defendant's other numerous claims of ineffective assistance of counsel. Lastly, we decline to reverse on the basis of cumulative error.

GREENWOOD, J., concurs.

WILKINS, Associate Presiding Judge (concurring in part and dissenting in part):

I completely concur in the main opinion regarding all issues except the reversal of defendant's conviction for aggravated kidnaping. In addition to affirming defendant's convictions for rape and forcible sodomy, I would affirm the aggravated kidnaping conviction. Under our statute, aggravated kidnaping in this case was committed if the jury found, based upon the evidence presented to it, that defendant

> intentionally or knowingly, without authority of law and against the will of the victim, by any means and in any manner, seize[d], confine[d], detain[ed], or transport[ed] the victim with intent:
>
> . . .
>
> (b) to facilitate the commission, attempted commission, or flight after commission or attempted commission of a felony; or
>
> . . .
>
> (e) to commit a sexual offense as described in Part 4 of this chapter [including rape and forcible sodomy].

Utah Code Ann. § 76–5–302(1) (1995).

Viewing the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict, *see State v. Dunn,* 850 P.2d 1201, 1205–06 (Utah 1993), substantial evidence was presented on these points. Defendant lured the victim to his apartment with a story that he had forgotten a book needed before going to the library to study. When they arrived at his apartment, the victim twice told him she would wait in the car, but he insisted that she come up to his apartment to see his Japanese souvenirs. After luring her to his apartment, he kept her there with the representation that the library was about to close and would be unavailable for study. Again she initially declined, and he had to persuade her to stay. He later assaulted her over a period of time sufficient for her to try three different escapes, and during which he not only raped and sodomized her, but also took the time to both handcuff the victim and later, still during the assault, to release her from the handcuffs in exchange for her promise not to try

to escape again. He repeatedly told her that if she did not permit the assaults, he would not let her go.

Later, defendant drove the victim from his apartment, the location of the assaults. Before doing so, defendant first tried to place a bag over the victim's head and ultimately resorted to covering her face with a jacket to keep her from later identifying his address as the crime scene. He kept her in his car for more than the time necessary to drive her directly to her own residence, during which time he tried to convince her not to report the crime and insisted that she promise not to kill herself.

Given these facts, the jury could well have found that defendant took the victim to his apartment with the intent to rape and sodomize her. They could also have easily found that she accepted his "invitation" to be driven home much the same way as she had earlier been forced to accept his "invitation" to remain silent and cease trying to escape to avoid both the handcuffs and his threat that he would not let her go.

Even if we assume that the assault did not begin until the victim was forcibly taken to defendant's bedroom, the time thereafter until she was again at liberty was significantly longer than that necessary to accomplish the brutal assault on her person. It seems perfectly reasonable to presume that the jury, relying upon the evidence presented and the instructions as to the law given them, found defendant guilty of aggravated kidnaping in addition to the crimes of rape and forcible sodomy.

In my opinion, the detention following the rape and forcible sodomy, clearly for the purpose of trying to substantially lessen the risk of detection, is sufficient to sustain the conviction.[1] This includes the time during which defendant detained the victim for purposes of trying to cover her view of his apartment address, as well as the extra time taken driving her to her own home trying to talk her out of reporting the crime, and responding to her feelings of emotional upset. These periods of detention are not "inherent" in the crimes of rape and forcible sodomy, and the detention could easily and logically have been found by the jury to be for the purpose of trying to reduce the likelihood of detection and prosecution. There is only defendant's testimony from which the jury could possibly have drawn the inference that defendant acted out of compassion or courtesy during the time after the assaults in driving the victim home. Given the cunning and brutal nature of defendant's attack on the victim, the jury could very easily decline to accept his story as truthful, and obviously did so. Indeed, the reasonable inference from the evidence drawn in favor of the verdict is that defendant had precious little regard for the feelings or physical well being of the victim at any time during their encounter.

In crafting the language of the aggravated kidnaping statute the way it did, the legislature clearly intended to include a factual circumstance such as this. The kidnaping occurred over a period far greater than the time minimally necessary to accomplish the rape and sodomy. The evidence established that defendant's extended detention of the victim constituted the additional offense of aggravated kidnaping. That is what the jury found, and I would not disturb that verdict.

---

1. It may well be that the detention during the course of the assault would be sufficient as well. This period includes the time while the victim tried to escape, while defendant tried to convince her to remain quiet and to give up her escape attempts, and while he first applied and then removed the handcuffs. None of these delays in releasing the victim are "inherent" in rape or in forcible sodomy. They are, however, inherent in kidnaping.