2003 UT App 3

**STATE of Utah, Plaintiff and Appellee,**

v.

**Konai BLOOMFIELD, Defendant and Appellant.**

**No. 20020249–CA.**

Court of Appeals of Utah.

Jan. 9, 2003.

112

Ronald J. Yengich and Vanessa Ramos–Smith, Yengich, Rich & Xaiz, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Kenneth A. Bronston, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before JACKSON, P.J., DAVIS, and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge.

¶ 1 Konai Bloomfield (Defendant) appeals his jury convictions of two counts of aggravated robbery, both first degree felonies, in violation of Utah Code Ann. § 76-6-302 (1999). Defendant contends there was insufficient evidence to convict, the trial court erroneously admitted a surveillance videotape, and his trial counsel was ineffective for failing to object to the admission of the surveillance videotape. We affirm.

## BACKGROUND[1]

¶ 2 About 1:30 a.m. on February 26, 2000, Defendant and two of his friends, George Afu (George) and Joe, went to Beto's Mexican Food restaurant (Beto's). The victims, Jose Farias (Jose) and Gabriel Calibello (Gabriel), along with their friend Rachel Redding (Rachel), were at Beto's eating when Defendant and his friends arrived. George entered the restaurant first, followed by Defendant and, Joe, a few seconds later. Upon entering the restaurant, Defendant approached Jose and asked him "what he was looking at." George then approached the victims' table and said "everything is fine ... we wanted to come and get something to eat," and then George shook Jose's and Gabriel's hands.

¶ 3 Defendant and his friends went to the counter to order their food. Moments later, Rachel and Jose also went to the counter to get a drink. George told Rachel and Jose to go ahead of them. During this time, Joe walked behind the table where Gabriel was sitting. Almost instantly, Defendant began beating Jose, and Joe began beating Gabriel. After Jose fell to the floor unconscious, Defendant and George continued to kick and stomp on Jose's face and head. Defendant then bent over Jose and ripped out his eye-

brow ring, saying "You won't be needing this." Joe joined Defendant in kicking and stomping Jose, then Joe searched Jose's pockets. While Joe was searching Jose's pockets, Defendant kicked Jose, turning him over. Defendant and Joe then went to where Gabriel was lying unconscious, and with Defendant standing over Joe, Joe searched Gabriel's pockets and took his wallet. Defendant and Joe then left. Security cameras in the restaurant recorded the entire incident.

¶ 4 As a result of the beating, Jose suffered multiple bruises, scrapes, and contusions to his head and face. Jose had tennis shoe markings on his head and, although breathing, he remained unconscious until the next morning. Gabriel was beaten unconscious and suffered a loss of memory from the time the beating began. Gabriel was in bed for ten days, and suffered a broken nose, a severe wound on his chin that required stitches, the loss of a bridge holding two false teeth, and the loss of a natural tooth.

¶ 5 The jury found Defendant guilty on both counts of aggravated robbery. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

█ ¶ 6 Defendant contends that there was insufficient evidence presented to support his convictions for aggravated robbery. We reverse a jury verdict "when the evidence ... [and inferences therefrom are] sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he [or she] was convicted." *State v. Waldron*, 2002 UT App 175,¶ 10, 51 P.3d 21 (quotations and citation omitted) (second alteration in original).

█ ¶ 7 Defendant also argues that the trial court committed plain error in admitting the surveillance videotape without first laying a proper foundation. To establish plain error, a defendant must establish that

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Waldron,*

2002 UT App 175,¶ 2, 51 P.3d 21 (quotations and citation omitted).

(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined.

*State v. Holgate*, 2000 UT 74,¶ 13, 10 P.3d 346 (citation and quotations omitted). However, if defense counsel has "made a conscious decision to refrain from objecting or has led the trial court into error, [this court] will then decline to save that party from the [alleged plain] error." *State v. Bullock*, 791 P.2d 155, 158 (Utah 1989).

■ ¶ 8 Finally, Defendant argues he received ineffective assistance of counsel when his attorney failed to object to the admission of the surveillance videotape. For Defendant to establish ineffective assistance of counsel, he "must [first] show that his trial counsel's performance was deficient, in that it fell below an objective standard of reasonableness.... [Second,] that there is a reasonable probability that the result would have been different absent the deficient performance." *State v. Finlayson*, 956 P.2d 283, 293 (Utah Ct.App.1998) (citations and quotations omitted) (first alteration in original).

## ANALYSIS

### I. Sufficiency of Evidence

#### A. Taking of Property

¶ 9 Defendant initially argues that the evidence presented below does not support a finding that he took Jose's eyebrow ring with a purpose to deprive.

Utah Code Ann. § 76–6–301 (1999) defines robbery as follows:

(a) the person unlawfully and intentionally *takes* or attempts to take personal proper-

ty in the possession of another from his person, or immediate presence, against his will, by means of force or fear;....

(Emphasis added.)

¶ 10 Defendant contends that in order for him to be convicted of a "taking" under the robbery statute, the State must prove he had a "purpose to deprive." Defendant argues the evidence presented at trial was limited to his ripping the eyebrow ring from Jose and throwing it at him. This evidence, Defendant asserts, at best is part of an *assault* and is insufficient to prove an intent to deprive. The State argues that robbery only requires the State prove that Defendant "[took] or attempt[ed] to take personal property in the possession of another." *Id.* The State contends that the "purpose to deprive" [2] element is expressly limited to Theft as defined in Utah Code Ann. § 76–6–404 (1999). Section 76–6–404 states, "A person commits theft if he obtains or exercises unauthorized control over the property of another with a *purpose to deprive* him thereof." *Id.* (emphasis added).

¶ 11 However, in *State v. Hill*, 674 P.2d 96 (Utah 1983), the supreme court "considered the State's argument that theft [was] not a lesser included offense of robbery because theft, as defined in § 76–6–404, requires a 'purpose to deprive' ... the victim of the property, which is not an element of robbery as defined in § 76–6–301." *Id.* at 97 n. 1. The supreme court rejected the State's argument, concluding that the " 'purpose to deprive' is inherent in the act of robbery in view of the manner of taking specified in § 76–6–301." [3] *Id.* Similarly, states with robbery statutes comparable to Utah's have interpreted them to include a "purpose to deprive" requirement. *See, e.g., State v. Morrison*, 181 Ariz. 279, 889 P.2d 637, 640 (Ct. App.1995) (concluding despite absence of ex-

---

**2.** Utah Code Ann. § 76–6–401(3) (1999) defines "purpose to deprive" under the Theft statute as having "the conscious object":

(a) To withhold property permanently or for so extended a period or to use under such circumstances that a substantial portion of its economic value, or of the use and benefit thereof, would be lost; or

....

(c) To dispose of the property under circumstances that make it unlikely that the owner will recover it.

**3.** Prior to the May 1, 1995 amendment, the Robbery statute read in relevant part, "Robbery is *the unlawful and intentional taking of personal property in the possession of another from his person, or immediate presence, against his will, accomplished by means of force or fear.*" Utah Code Ann. § 76–6–301 (1978).

plicit language "robbery in Arizona requires the specific intent to deprive the victim of his property"); *State v. Belue*, 127 Idaho 464, 902 P.2d 489, 491 (Ct.App.1995) (same); *Gregory v. State*, 259 Ind. 652, 291 N.E.2d 67, 69 (1973) (holding "felonious intent" language in robbery statute infers intent to take property with purpose of "depriving the owner of its use and possession"); *State v. Coleman*, 373 N.W.2d 777, 781 (Minn.1985) (stating robbery and assault would be identical offenses if courts did not construe the specific intent to deprive into robbery statute); *State v. Corwin*, 32 Wash.App. 493, 649 P.2d 119, 122 (1982) ("The statutory elements of robbery, presuppose that intent to deprive the victim of property is a necessary element."); *State v. Plumley*, 179 W.Va. 356, 368 S.E.2d 726, 728 (1988) (recognizing that intent "to feloniously deprive the owner permanently of his property, is an essential element of the crime of robbery.").

 ¶ 12 Therefore, Defendant correctly asserts that the robbery statute requires the State to prove that he committed the taking with a "purpose to deprive ... the victim of the property." Although we agree with Defendant concerning the purpose to deprive element, he did not raise this issue at trial and stipulated to jury instructions that did not include an intent to deprive element. Defendant has thus failed to preserve this claim for appeal. *See State v. Davis*, 965 P.2d 525, 537 (Utah Ct.App.1998) (" 'One who fails to make a necessary objection or who fails to insure that it is on the record is deemed to have waived the issue.' " (citation omitted)).[4] Thus, we affirm Defendant's conviction for aggravated robbery of Jose, based on his taking of Jose's eyebrow ring.

### B. Accomplice Theory

¶ 13 Defendant also argues that the evidence was insufficient to show that he partic-

ipated as an accomplice in the robbery of the victims.[5] Utah's accomplice liability statute states:

> Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct.

Utah Code Ann. § 76-2-202 (1999).

 ¶ 14 Defendant argues that the evidence presented suggests, at most, that Defendant was merely present during the commission of the robbery, and under the "mere presence" doctrine, Defendant cannot be liable. Defendant cites *In re V.T.*, 2000 UT App 189, 5 P.3d 1234, in support of his argument. In *In re V.T.*, the defendant was charged as an accomplice in the theft of a camcorder. *See id.* at ¶ 8. The court stated that case law requires "something more than a defendant's passive presence during the planning and commission of a crime" to constitute encouragement. *Id.* at ¶ 16. "There must be evidence showing that the defendant engaged in some active behavior, or at least speech or other expression, that served to assist or encourage the primary perpetrators in committing the crime." *Id.* The court ultimately found there was insufficient evidence on which to convict the defendant under an accomplice liability theory because the evidence demonstrated only that the defendant was present with his friend when the camcorder was stolen and when his friend used the telephone in an effort to sell the stolen camcorder to a pawn shop. *See id.* at ¶ 18.

 ¶ 15 Defendant argues that because he just stood by while Joe went through the victims' pockets, his mere passive presence was insufficient to find him

---

4. Defendant argues for the first time in his reply brief that the failure to instruct the jury on the element of "purpose to deprive" was plain error, conceding that counsel stipulated to the instruction that did not require the jury to find that Defendant acted with a "purpose to deprive." Because this issue was not timely raised, we do not address it. *See Brown v. Glover*, 2000 UT 89, ¶ 23, 16 P.3d 540 ("Generally, issues raised by an

appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court.").

5. Defendant does not argue that there was insufficient evidence of an intent to deprive in the taking of the two victims' wallets.

guilty as an accomplice. However, at trial, the State presented its theory that the robberies were preplanned by Defendant and his friends before entering the restaurant. To support its theory, the State used the surveillance videotape and witness testimony to illustrate that when Jose approached the counter, Joe moved behind Gabriel. Once in position, Defendant and Joe began to simultaneously beat the victims to incapacitate them. The State argued that Defendant was an active participant in the robberies by incapacitating Jose while Joe did the same to Gabriel, in an effort to prevent either victim from interceding to protect his friend. The State also argued that Defendant aided Joe by kicking Jose, turning him over, and allowing Joe to go through Jose's pockets. In addition, Defendant, as a form of encouragement, stood over Joe while Joe went through Gabriel's pockets and stole his wallet. "[W]hile mere presence at the scene of a crime affords no basis for a conviction, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." *American Fork City v. Rothe*, 2000 UT App 277,¶ 7, 12 P.3d 108 (quotations and citations omitted) (alteration in original). Therefore, we conclude that sufficient evidence was presented for the jury to find that Defendant was an accomplice to the robberies.

C. Serious Bodily Injury

¶ 16 Utah Code Ann. § 76-6-302(1)(b) (1999) states, that "A person commits aggravated robbery if in the course of committing robbery, he ... causes serious bodily injury upon another." Defendant argues that the evidence regarding Jose's injuries was insufficient to meet the definition of serious bodily injury under Utah Code Ann. § 76-1-601(10) (1999). Section 76-1-601(10) defines serious bodily injury as "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death."

¶ 17 The jury viewed the surveillance video showing Jose being severely beaten, falling to the floor unconscious, and continuing to be kicked and stomped about his head and face numerous times by Defendant. In addition, Detective Huggard testified that upon arriving at the scene he found Jose unconscious with numerous bruises, scrapes, and a head contusion. Huggard testified that he considered Jose to be in "critical or nearly critical condition for the fact that he was unconscious, not alert, but still breathing." Huggard further testified that Jose's head appeared to have tennis shoe marks on it. Rachel also testified to the severity of Jose's beating and that Jose did not regain consciousness until the following morning.

¶ 18 Defendant contends that the evidence establishes, at most, the offense of aggravated assault, a third degree felony; therefore, Defendant's conviction should be reduced. However, the jury was instructed on the lesser offense of aggravated assault and the accompanying definition of "substantial bodily injury" and rejected it. Defendant argues, however, that Jose's unconsciousness cannot constitute serious bodily injury under the statute. No Utah cases have directly addressed this question, but several suggest that a jury may find that an assault resulting in temporary unconsciousness meets the statutory definition of serious bodily injury. In *State v. Peterson*, 681 P.2d 1210 (Utah 1984), the supreme court affirmed a conviction for aggravated assault where the victim was choked and became unconscious, but survived, because the assault "could have caused the death or serious bodily injury of [the victim]." *Id.* at 1219; *see also State v. Poteet*, 692 P.2d 760, 764 (Utah 1984) (affirming aggravated assault conviction where victim was unconscious 15 to 18 hours and doctor testified victim could have died); *State v. Fisher*, 680 P.2d 35, 37 (Utah 1984) (stating strangulation causing unconsciousness indicated intention to cause serious bodily injury). We therefore conclude that it is "within the province of the jury to consider the means and manner by which the victim's injuries were inflicted along with the attendant circumstances" in determining whether a defendant caused serious bodily injury. *State v. King*, 604 P.2d 923, 926 (Utah 1979). In this case, the evidence presented was

sufficient for the jury to determine that Defendant's beating of Jose caused serious bodily injury, within the meaning of section 76-1-601(10).

## II. Admission of the Surveillance Videotape

### A. Plain Error

¶ 19 Because no objection was made at trial, Defendant argues on appeal that the trial court committed plain error in admitting the surveillance videotape into evidence. In order to establish plain error, Defendant must establish that

(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined.

*State v. Holgate,* 2000 UT 74,¶ 13, 10 P.3d 346 (quotations and citation omitted).

¶ 20 Defendant contends that the State failed to lay a proper foundation for the videotape to be admitted into evidence. Specifically, Defendant argues no testimony was presented that the events depicted were an accurate representation of the actual incident. Therefore, it was error to admit the videotape.

¶ 21 Utah Rule of Evidence 901 states:

(a) *General provision.* The requirement of authentication or identification as a condition precedent to admissibility is *satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.*

(b) *Illustrations.* By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) *Testimony of witness with knowledge.* Testimony that a matter is what it is claimed to be.

(Emphasis added.)

¶ 22 The State sought to admit the surveillance video through the testimony of Detective Huggard. Huggard testified that upon arriving at the scene, Beto's employees informed him that the restaurant's surveillance video had recorded the whole incident. Huggard testified that the employees then gave him the surveillance videotape. Upon the State's attempts to have Huggard identify a portion of the videotape, defense counsel objected for lack of foundation. The State then proceeded to lay a foundation for the videotape by playing a portion of the tape for Huggard to determine if he recognized the surveillance videotape as the one he received from the Beto's employee. Huggard affirmed that the videotape was in fact the one he received on the night of the incident. Huggard then used a diagram of the interior of Beto's to identify each area of the restaurant where the four cameras were located. The State played the surveillance video while Huggard identified the individuals appearing on the video, including Defendant. Defendant stipulated that he was the individual on the video. Huggard further testified that the video image was consistent with the way he found the scene when he arrived at the restaurant that evening. Specifically, Huggard testified that the video image was consistent with where he found the victims Gabriel and Jose lying and where their blood was located on the floor. The trial court then admitted the surveillance video into evidence without further objection by Defendant.

¶ 23 The events on the videotape were further corroborated by the testimony of both Rachel and Defendant. While viewing the videotape, Rachel narrated the events that were taking place and the individuals as they appeared on the screen. Defendant also used the video to testify about the events taking place on the screen. Neither Rachel nor Defendant claimed that what was on the video was not an accurate representation of what happened that night.

¶ 24 The general rule in Utah is that when "a competent witness with personal knowledge of the facts represented by a photograph [or video] testifies that the photograph accurately reflects those facts, it is admissible." *State v. Purcell,* 711 P.2d 243, 245 (Utah 1985). Although it is true that Detective Huggard lacked personal knowledge as to the actual events as they occurred,

he did possess personal knowledge that the surveillance videotape given to him the night of the robberies was the same one used in court, that it depicted the interior of Beto's as he had known it to be, and that its portrayal of the victims was consistent with the location where he found the victims lying and the location of their blood. Further, the events depicted in the surveillance video were substantially corroborated by the testimony of both Rachel and Defendant, who did possess personal knowledge of the events depicted in the videotape. We believe that this testimony was "sufficient to support a finding that the matter in question [was] what its proponent claim[ed]." Utah R. Evid. 901(a). However, even if it may have been error to admit the videotape solely through Detective Huggard's testimony, we conclude that such error was invited by Defendant. *See State v. Perdue,* 813 P.2d 1201, 1206 (Utah Ct.App.1991) (stating invited error defeats claim of plain error).

¶ 25 Invited error may exist when "defendant's counsel consciously chose not to object and 'affirmatively led the trial court to believe that there was nothing wrong with the instruction.' " *State v. Anderson,* 929 P.2d 1107, 1109 (Utah 1996) (citation omitted). When counsel consciously decides not to object as part of trial strategy, appellate courts "should refuse to consider the merits of the trial court's ruling." *State v. Bullock,* 791 P.2d 155, 159 (Utah 1989). A "defendant cannot lead the court into error by failing to object and then later, when he is displeased with the verdict, profit by his actions." *Anderson,* 929 P.2d at 1109 (quotations and citation omitted).

¶ 26 In this case, after the State attempted to lay a proper foundation through Detective Huggard's testimony, Defendant's counsel stated he had "no objection" to the admission of the videotape. Defendant, thus, affirmatively indicated to the court he had no objection to the videotape. Additionally, during trial, Defendant used the surveillance videotape to support his theory that he did not commit aggravated robbery. Defendant's theory was that he was guilty of, at most, assault. In cross-examining Detective Huggard, defense counsel asked, "And is it

your understanding that [Defendant] never touched Gabriel?" When Huggard responded that he didn't know, defense counsel asked "Did you view the video tape?" When Huggard responded affirmatively, defense counsel asked "Did you see him at all touch Gabriel?"

¶ 27 Again, when cross-examining Rachel, defense counsel asked if she saw Defendant going through the victims' pockets. When Rachel stated that she didn't know, defense counsel asked "You saw the video, right?" Rachel responded affirmatively. The following exchange then took place:

DEFENSE COUNSEL: Did you ever see [Defendant] taking anything out of their pockets?

RACHEL: I don't know which one it was, but I saw someone patting the [pockets], going through them.

DEFENSE COUNSEL: Was it the two people or one person?

RACHEL: If I recall, there was only one person actually going through the pockets. Not sure who.

DEFENSE COUNSEL: And the *one person on the video,* was that the person with the dark coat? Or the person with the white shirt?

. . . .

DEFENSE COUNSEL: Did you see any of them putting their hands inside the pocket?

RACHEL: I seen [sic] one of them putting their hands in Jose's pocket. I don't know if this was—I seen a hand going in the pocket and I don't know if it was from two people or one person.

DEFENSE COUNSEL: *And you can't tell by looking at the video tape,* either?

¶ 28 On direct examination defense counsel asked Defendant if he remembered kicking Jose, as the video depicts. Defendant responded that he did remember. Later Defendant testified that he became scared after the attack and contacted his attorney when he found out that he had been caught on the restaurant's surveillance video and was wanted. Finally, in closing arguments, defense counsel referred to the video to support his

theory that Defendant did not plan or carry out the robbery of these victims.

> And as you will *see on the tape,* and what they couldn't explain is my client never touched Gabriel, never took anything, any property, had no intention to take any property .... Rachel testified .... She remembered specifically what [Defendant] said, ... even though she couldn't tell you that one minute earlier when she was *viewing the video tape* whether she saw [Defendant] touch Gabriel or whether she saw [Defendant] take property from either one of them .... I would ask you, ladies and gentlemen, that you hold the future of my client in your hand, and all he wants from you is a fair shake, that you need to read all the jury instructions, remember the facts, *look at the video as many times as you want,* see what involvement my client had, if he touched Gabriel at all, took anything ....

¶ 29 Defendant's use of the videotape to support his theory that he did not participate in the robberies of either victim was clearly part of counsel's trial strategy. Defendant not only indicated to the court he had no objection to the videotape's admission, he also used the tape himself, in an attempt to further his defense theory. Under these circumstances, Defendant invited any error and we will not consider his plain error argument.

## B. Ineffective Assistance of Counsel

██ ¶ 30 Defendant argues that his trial counsel was ineffective for not objecting to the admission of the videotape.

> To be successful on this claim, defendant "must [first] show that his trial counsel's performance was deficient, in that it 'fell below an objective standard of reasonableness.'" Once that is established, defendant must show that "there is a 'reasonable probability' that the result would have been different" absent the deficient performance.... Furthermore, "[i]n evaluating defense counsel's strategy under an ineffective-assistance analysis, 'we give trial counsel wide latitude in making tactical decisions and will not question such deci-

sions unless there is no reasonable basis supporting them.'"

*State v. Finlayson,* 956 P.2d 283, 293 (Utah Ct.App.1998) (citations omitted).

██ ¶ 31 As discussed above, defense counsel did not object to the admission of the surveillance videotape because he used it as part of his trial strategy to support his theory that Defendant did not commit aggravated robbery. Given this strategy, there was a reasonable basis for trial counsel's decision to allow the admission of the surveillance videotape. Therefore, because "we give trial counsel wide latitude in making tactical decisions," *id.,* and because defense counsel's strategy was reasonable, Defendant has failed to show he received ineffective assistance of counsel.

## CONCLUSION

¶ 32 Defendant correctly argues that the offense of robbery includes a "purpose to deprive" element. Defendant, however, did not raise this issue before the trial court and stipulated to jury instructions omitting this element. Defendant therefore is precluded from asserting it on appeal. We also examined the sufficiency of evidence on the alternative ground supporting Defendant's conviction for aggravated robbery as an accomplice. We conclude that there was ample evidence presented that Defendant actively assisted and encouraged in the robberies of the victims. There was also sufficient evidence presented from which the jury could find that Defendant caused serious bodily injury to Jose. Finally, we determine that it was not plain error for the trial court to admit the surveillance videotape, nor was Defendant's trial counsel ineffective for failing to object to its admission. Therefore, we affirm Defendant's convictions.

¶ 33 WE CONCUR: NORMAN H. JACKSON, Presiding Judge, and JAMES Z. DAVIS, Judge.