**2017 UT App 2**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TIMOTHY NOBLE WALKER,
Appellant.

Opinion
No. 20150317-CA
Filed January 6, 2017

Third District Court, Salt Lake Department
The Honorable Mark S. Kouris
No. 141904012

Lori J. Seppi and Michael R. Sikora, Attorneys
for Appellant

Sean D. Reyes and Marian Decker, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and KATE A. TOOMEY concurred.

POHLMAN, Judge:

¶1     Timothy Noble Walker asserts that he was denied his federal constitutional right to a jury trial with respect to a key element of the State's case. We agree and therefore vacate his conviction and remand for a new trial.

BACKGROUND[1]

¶2 Walker and his wife (Wife) had been married less than a month when Wife's employer transferred her job from South Carolina to Utah. The couple then moved to Utah, bringing Wife's teenage son (Son) with them. They stayed in hotels for a few days while Wife began work at her new location.

¶3 One evening the three were together in their hotel room. Walker and Wife had been drinking and, sometime during the evening, Wife picked up Walker's glass and poured his drink down the sink. Upset, Walker struck Wife in the face. She fell against the refrigerator, then stood up and walked around the hotel room, searching for something. She found the keys to the couple's van in Walker's clothing, and she put them in her pocket.

¶4 Walker approached Wife from behind and put his right wrist against her neck. He lifted her up with his right hand while reaching into her pocket with his left hand, attempting to get the keys. During the struggle that followed, Wife kicked at Walker and pulled at his arm, trying to loosen his hold on her neck. But Walker used his left hand to reinforce his grip, and he lifted Wife completely off the floor. Wife was unable to wrench free.

¶5 Son was sitting on a bed a few feet away. He saw Wife struggling to free herself and heard her making "choking sounds." He told Walker to stop, but Walker persisted. Walker kept his wrist pressed against Wife's neck until she suddenly exhaled. Her eyes rolled back in her head, her arms fell to her

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *Mackin v. State*, 2016 UT 47, ¶ 2 n.1 (citation and internal quotation marks omitted).

sides, and her body went limp. She had been subject to Walker's grip for approximately ten to fifteen seconds.

¶6    Walker abruptly let go and pushed Wife away. She fell face-first against the wall and did not move. Walker began gathering his things. When Son asked him what he had done, Walker replied that he "didn't do anything" and that Wife was "faking it" because she was a "drama queen." Walker then walked out of the room. He drove away, ultimately returning to South Carolina.

¶7    Son attempted to waken Wife and shift her into a sitting position. He also called the police. After about a minute, Wife began to regain her faculties. She heard Son crying and calling her name. Not long afterward, she heard a knock on the door when a police officer arrived.

¶8    The officer found Son and Wife in the hotel room. Wife was conscious but "didn't appear [to be] in the right state of mind," and the officer "couldn't understand what she was saying at first." After listening to Son's description of the evening's events, the officer called for medical assistance to evaluate Wife. He also photographed Wife's injuries, which consisted of "visible injury" to her right eye and "red marks around her neck," which "appeared to be swollen." The officer also called Walker. After the officer identified himself, Walker said, "I'm driving out of the state, don't worry about me," and hung up.

¶9    A paramedic evaluated Wife and asked if she wanted to go to the hospital, but Wife declined. However, Wife saw a doctor several days later and told him that she felt soreness and tenderness about her head, face, and neck. She underwent testing and was told to "take it easy" and allow her body time to heal, but she was not prescribed any particular medical treatment.

¶10    Walker was charged with aggravated assault, a second degree felony. *See* Utah Code Ann. § 76-5-103(2)(b) (LexisNexis 2012).[2] He elected to have the charge tried by a jury. Wife, Son, and the officer each testified for the State regarding the evening's events. During cross-examination, Wife was asked about the medical documentation of her injuries. She testified that she had suffered a concussion and headaches, but she could not identify any reference to those injuries in the records from her doctor visit. Wife also testified that she was unaware of any long-term physical or medical complications resulting from the incident.

¶11    In defense, Walker elicited brief testimony from the paramedic, who stated that he had not characterized Wife's injuries as threatening life or limb. Walker also called Robert Rothfeder as an expert witness on the subject of strangulation injuries. Rothfeder's testimony distinguished structural injuries to the neck from suffocation injuries to the brain. According to Rothfeder, causing structural damage to a person's trachea requires "a significant amount of force" and would result in a "serious situation" from which the body would not "automatically rebound." Regarding suffocation, Rothfeder testified that lack of oxygen could cause brain injury or death after a "number of minutes. Most people would say two to three minutes in an otherwise reasonably healthy person. . . . [But] [t]he brain can survive those kinds of insults for a period, for that period of time."

¶12    Rothfeder also testified that putting pressure on a certain place on either side of the neck—on the carotid sinus—would lead to a drop in blood pressure that could result in a person fainting. Rothfeder explained that medical professionals may massage the carotid sinus for therapeutic purposes—for

---

2. We reference the statutory provisions in effect in early 2014, when the events at issue occurred.

example, to treat a person experiencing a rapid heart rate. But a "complication of doing that" is a person may "faint or pass out . . . if [his or her] blood pressure drops too quickly." According to Rothfeder, pressure on the carotid sinus for as little as ten to fifteen seconds could cause a person to lose consciousness. But if the pressure were removed, the person's pulse would increase and he or she would quickly regain consciousness.

¶13 Following Rothfeder's testimony, the court instructed the jury, giving it four options. The jury could find Walker not guilty or find him guilty of one of the following offenses: aggravated assault, a second degree felony; aggravated assault, a third degree felony; or assault, a class B misdemeanor. If Walker had committed more than one offense, the jury was instructed to find him guilty of the most serious crime.

¶14 The instructions for the offenses largely tracked the relevant statutory language. For the most serious charge—aggravated assault, a second degree felony—the jury was required to find that Walker had intentionally, knowingly, or recklessly committed assault; used means or force likely to produce death or serious bodily injury; and caused serious bodily injury. *See* Utah Code Ann. §§ 76-2-102, 76-5-103(1), (2)(b) (LexisNexis 2012). The instructions for aggravated assault, a third degree felony, imposed the same requirements except that Walker need not have caused serious bodily injury. *See id.* § 76-5-103(1), (2)(a). The requirements for the misdemeanor assault charge, per the applicable statutory language, dropped any reference to "serious bodily injury." *See id.* § 76-5-102. The jury was instructed that Walker was guilty of misdemeanor assault if he had intentionally, knowingly, or recklessly committed an act with unlawful force or violence and caused bodily injury or created a substantial risk of bodily injury. *See id.* §§ 76-2-102, 76-5-102.

¶15   "Serious bodily injury" was defined in accordance with its statutory meaning as "bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death." *See id.* § 76-1-601(11). "Bodily injury" was also defined according to the relevant statutory language as "physical pain, illness[,] or an impairment of physical condition." *See id.* § 76-1-601(3).

¶16   Over Walker's objection, the jury received an additional instruction (Instruction 18) that did not mirror any statutory language but was based on two Utah Supreme Court cases that addressed whether strangulation or attempted strangulation constituted serious bodily injury or force sufficient to cause such injury. *See State v. Speer*, 750 P.2d 186, 191 & n.4 (Utah 1988); *State v. Fisher*, 680 P.2d 35, 37 (Utah 1984). Instruction 18 stated, "You are instructed that strangulation to the point of unconsciousness constitutes serious bodily injury." Walker objected that this instruction violated his right to have the jury "make [a] determination of proof beyond a reasonable doubt on each and every element of the offense." His objection was overruled.

¶17   In closing argument, the prosecutor asserted that the "paramount issue" was whether Wife "suffer[ed] serious bodily injury." Commenting that "this is the part where I'm going to ask you to follow the law," the prosecutor walked the jury through the statutory definitions of bodily injury and serious bodily injury and then turned to Instruction 18, stating: "[T]he next instruction gives you a further definition of what the law recognizes as serious bodily injury. It says, you are instructed that strangulation to the point of unconsciousness constitutes serious bodily injury." The prosecutor then asked, "Do you see what I mean when I said this just comes down to your ability to follow the law?"

¶18    The case was submitted to the jury and, after deliberating for more than an hour, the jury sent the court a note asking, "What is the definition of 'constitutes'? As in [Instruction] 18." The court responded, "Use the common and ordinary meaning of the word. A dictionary definition is to 'amount to' or 'add up to.'" The jury continued deliberating for about another hour and a half before reaching its verdict. The jury acquitted Walker of the most serious offense but found him guilty of aggravated assault, a third degree felony. Walker appeals.

## ISSUE AND STANDARD OF REVIEW

¶19    Walker asserts that his federal constitutional right to a jury trial, as secured by the Sixth and Fourteenth Amendments to the United States Constitution, was violated when the trial court instructed the jury that "strangulation to the point of unconsciousness constitutes serious bodily injury." According to Walker, a trial court "violates the Sixth and Fourteenth Amendments if it instructs a jury how to find on an element of the offense." Here, Walker claims that if the jury found that he choked Wife and she lost consciousness, even briefly, the jury was required to find that he used force likely to produce serious bodily injury. Walker's challenge to the jury instruction presents a question of law, which we review for correctness. *See State v. Jeffs*, 2010 UT 49, ¶ 16, 243 P.3d 1250.

## ANALYSIS

¶20    The Sixth Amendment protects a defendant's right to trial by jury in federal criminal proceedings. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . . ."). The Fourteenth Amendment guarantees that right to criminal defendants in state courts—i.e., those who, "were they to be tried in a federal court[,] would come within the Sixth

Amendment's guarantee." *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). Read together, these provisions require criminal convictions in state proceedings to rest upon a jury determination that the defendant is guilty of every element of the crime charged, beyond a reasonable doubt. *See id.*; *cf. United States v. Gaudin*, 515 U.S. 506, 510 (1995) (discussing the Fifth and Sixth Amendments in the context of a federal criminal proceeding). A state must therefore persuade the jury "of the facts necessary to establish each of those elements." *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993).[3]

¶21 Neither the legislature nor the judiciary may usurp the jury's role as fact-finder. While legislatures are largely "free to choose the elements that define their crimes," *Jones v. United States*, 526 U.S. 227, 241 (1999), statutory directives that "foreclose[] independent jury consideration of whether the facts proved establish[] certain elements of the offense[]" violate a defendant's Fourteenth Amendment rights, *see, e.g.*, *Carella v. California*, 491 U.S. 263, 266 (1989) (per curiam).

¶22 For example, a jury instruction that "[t]he law presumes that possession of property recently stolen, when no satisfactory explanation of such possession is made, shall be deemed prima facie evidence that the person in possession stole the property," although tracking statutory language, creates an impermissible mandatory presumption. *State v. Crowley*, 2014 UT App 33, ¶¶ 3, 8–13, 16, 320 P.3d 677 (internal quotation marks omitted) (holding the instruction unconstitutional because it lacked "language clarifying that the jury [was] allowed to make a

---

3. Moreover, following *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), "every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment." *Blakely*, 542 U.S. at 313 (emphasis omitted).

permissive inference, and because the instruction contain[ed] the confusing words 'prima facie' with no supporting explanation"). "Such directions subvert the presumption of innocence accorded to accused persons and also invade the truth-finding task assigned solely to juries in criminal cases." *See Carella*, 491 U.S. at 265 (concluding that jury instructions incorporating statutory presumptions violated the Fourteenth Amendment); *see also, e.g.,* *Sandstrom v. Montana*, 442 U.S. 510, 518 & n.6, 524 (1979) (same).

¶23    The judiciary likewise must take care not to step into the jury's fact-finding shoes. While "it is the role of the judge to 'instruct the jury on the law,'" *State v. Palmer*, 2009 UT 55, ¶ 14, 220 P.3d 1198 (quoting *Gaudin*, 515 U.S. at 513), it is the jury's constitutional prerogative to determine the facts and "to apply the law to those facts and draw the ultimate conclusion of guilt or innocence," *Gaudin*, 515 U.S. at 514. A judge, therefore, may not direct a verdict for the State, in whole or in part, no matter how damning the evidence. *See Sullivan*, 508 U.S. at 277.

¶24    There is an exception to these principles for "pure question[s] of law," which are not within the province of the jury and thus "cannot implicate the right to a jury trial." *Palmer*, 2009 UT 55, ¶¶ 14–18 (concluding that the timing of a defendant's conviction—either at the time of sentencing or at the time he pleaded guilty—was a pure question of law for the judge to decide). But a fact question, or a mixed question of law and fact, does not morph into a pure legal question for Sixth Amendment purposes merely because the evidence is overwhelming and might be characterized as supporting only one reasonable conclusion as a matter of law. *Cf. Rose v. Clark*, 478 U.S. 570, 579–82 & n.10 (1986) (suggesting that instructing a jury to presume malice or intent is error even if that "inference is overpowering" and it would "defy common sense" to conclude otherwise), *abrogated on other grounds by Brecht v. Abrahamson*, 507 U.S. 619 (1993). Thus, a court errs by instructing a jury that, as a matter of law, a bicycle path is a public park constituting a drug-free zone,

*State v. Davis*, 2007 UT App 13, ¶ 12, 155 P.3d 909, or by determining that a defendant is a "Category I restricted person" barred from possessing a firearm, *State v. Liti*, 2015 UT App 186, ¶¶ 25–26, 355 P.3d 1078.

¶25 In this case, the trial court instructed the jury that "strangulation to the point of unconsciousness constitutes serious bodily injury," relying on two Utah Supreme Court opinions that addressed whether strangulation or attempted strangulation constituted serious bodily injury or force sufficient to cause such injury. *See State v. Speer*, 750 P.2d 186, 191 & n.4 (Utah 1988); *State v. Fisher*, 680 P.2d 35, 37 (Utah 1984). But as set forth below, whether strangulation to unconsciousness constitutes serious bodily injury is not a pure legal question. The matter is within the province of the jury and, in urging us to conclude otherwise, the State fails to properly distinguish the Legislature's role in defining elements of criminal offenses, the appellate court's role in reviewing criminal proceedings, and the trial court's role in instructing the jury.

¶26 Whether a defendant caused serious bodily injury or used means or force likely to produce such injury, for purposes of an aggravated assault offense, is a question for the jury to decide based on the facts presented in the case before it. The Utah Code sets forth the elements of aggravated assault and provides a legal definition of the term "serious bodily injury" to guide the fact-finder's inquiry. Utah Code Ann. §§ 76-5-103, 76-1-601(11) (LexisNexis 2012) ("'Serious bodily injury' means bodily injury that creates or causes serious permanent disfigurement, protracted loss or impairment of the function of any bodily member or organ, or creates a substantial risk of death."). When the State brings charges and prosecutes a defendant for that offense, "it is within the province of the jury to consider the means and manner by which the victim's injuries were inflicted along with the attendant circumstances in determining whether a defendant caused serious bodily injury," *see State v. Bloomfield*,

2003 UT App 3, ¶ 18, 63 P.3d 110 (citation and internal quotation marks omitted), or used means or force likely to produce such injury, *cf. id.*

¶27 In addition, Utah appellate courts have routinely noted in similar contexts that this type of fact-intensive question must be put to the jury. *See, e.g., Mackin v. State*, 2016 UT 47, ¶ 28 ("Whether in the course of committing a robbery a defendant uses an item in a way that is capable of causing death or serious bodily injury is a question of fact for the jury."); *State v. Pham*, 2016 UT App 105, ¶¶ 20–22, 372 P.3d 734 (addressing whether a jury could reasonably conclude that a shooting resulted in serious bodily injury by creating a substantial risk of death, relying on *Bloomfield*, 2003 UT App 3, ¶ 18), *cert. granted*, 384 P.3d 567 (Utah Sept. 12, 2016); *State v. Ekstrom*, 2013 UT App 271, ¶¶ 18–26, 316 P.3d 435 (reversing the defendant's conviction because the statutory definition of "serious bodily injury" was not given to the jury tasked with deciding whether the defendant committed aggravated assault by using an item capable of causing serious bodily injury or by using other means or force likely to produce death or serious bodily injury).

¶28 The State nevertheless asserts that the Utah Supreme Court has limited the jury's role with regard to one type of serious bodily injury and the use of force likely to produce it. According to the State, "the Utah Supreme Court has long held that strangulation to unconsciousness constitutes serious bodily injury as a matter of law," and the State therefore asserts that a jury instruction incorporating that proposition must be upheld. We do not believe the cases cited by the State require that result.

¶29 In *State v. Fisher*, 680 P.2d 35 (Utah 1984), the Utah Supreme Court addressed a question of evidentiary sufficiency—namely, whether sufficient evidence supported the defendant's conviction of second degree murder under a statutory provision requiring that the defendant "inten[ded] to

cause serious bodily injury." *Id.* at 37. Because the defendant "testified that he intentionally placed his hands on the victim's neck, that he intentionally squeezed her throat, and that he intended to get her to go unconscious," the defendant "intentionally committed an act that is dangerous to human life (strangulation), intending to cause serious bodily injury (protracted loss or impairment of both the heart and the brain, i.e., unconsciousness)." *Id.* (internal quotation marks omitted). Based on this reasoning, the supreme court concluded that the evidence amply supported the conviction, "holding that strangulation constitutes 'serious bodily injury.'" *Id.* at 37–38.

¶30    Notwithstanding the categorical sweep of *Fisher*'s language, the opinion held that strangulation with intent to cause unconsciousness was, at least under the circumstances of that case, "virtually conclusive" of "intent to inflict serious bodily injury." *Id.* But the *Fisher* court did not hold—or even address—whether juries in subsequent cases should be instructed that *if* a defendant strangles another with intent to cause unconsciousness, the jury *must find* that the defendant intended to cause serious bodily injury. *See id.* at 36–38. In light of the categorical phrasing in *Fisher*, the trial court's decision to instruct the jury as it did was understandable. Nevertheless, it was incorrect.

¶31    "[T]here is a distinction between determining whether the evidence [is] sufficient to support a plea or conviction . . . and instructing the jury as a matter of law that an element of the offense has been established . . . ." *State v. Moore*, 699 N.W.2d 733, 737 (Minn. 2005). While the State would have us interpret *Fisher* as addressing both questions, the supreme court's discussion does not indicate that it was addressing the latter issue or that it intended its conclusion, based on the facts of that case, to be used as a jury instruction in future cases. We see no reason to read *Fisher* so broadly, particularly when doing so risks "violating the requirement that criminal convictions must 'rest

upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Id.* (quoting *United States v. Gaudin*, 515 U.S. 506, 510 (1995)). The State's reliance on *Fisher* is thus misplaced.

¶32    The State's reliance on *State v. Speer*, 750 P.2d 186 (Utah 1988), is similarly unavailing. In *Speer*, the defendant was convicted of aggravated assault and aggravated burglary. *Id.* at 188. At issue on appeal was whether the jury should also have been instructed on lesser offenses. *Id.* at 190–91. That determination turned on whether "there [was] a rational basis for a verdict acquitting the defendant of the offense[s] charged and convicting him of the included offense[s]." *Id.* at 190 (citation and internal quotation marks omitted).

¶33 Citing evidence of strangulation or attempted strangulation, the Utah Supreme Court concluded that the requisite rational basis was lacking. *Id.* at 191. Because the "defendant admitted choking [the victim] about the throat until, by her testimony, she almost passed out," there was "uncontroverted testimony establish[ing] that [the defendant] used force likely to cause death or serious bodily injury." *Id.* (citation and internal quotation marks omitted). There was thus "no theory of the evidence that would have supported a verdict acquitting [the defendant] of aggravated burglary or aggravated assault and convicting him of the lesser offenses." *Id.* In support of this conclusion, the supreme court stated in a footnote, "See *State v. Fisher*, 680 P.2d 35, 37 (Utah 1984), where we held that strangulation constitutes 'serious bodily injury.'" *Speer*, 750 P.2d at 191 & n.4.

¶34    The Utah Supreme Court thus concluded, based on the circumstances before it, that the evidence did not trigger the trial court's obligation to provide lesser offense instructions. *Id.* at 190–91. But as in *Fisher*, the supreme court neither held nor addressed whether juries in subsequent cases would be required

to find that strangulation or attempted strangulation constituted serious bodily injury or force likely to cause such injury. *See id.* And as set forth above, such a requirement would be improper.

¶35    While the strength of the State's evidence may be a crucial factor with regard to lesser offense instructions, it does not provide grounds for removing an element of an offense from the jury's consideration. *See Rose v. Clark*, 478 U.S. 570, 581–82 & n.10 (1986) (noting that "[s]tates are not constitutionally required to instruct juries about lesser included offenses where such instructions are not warranted by the evidence," but even when the evidence is "overpowering," instructing the jury that an element of the offense may be presumed would still be error), *abrogated on other grounds by Brecht v. Abrahamson*, 507 U.S. 619 (1993). An appellate court may hold that a defendant is not entitled to a lesser included offense instruction because, under the circumstances of that case, there is no "question of fact as to whether [the injury] is mere bodily harm or great bodily harm"—it "constitutes great bodily harm." *State v. Brice*, 80 P.3d 1113, 1117 (Kan. 2003) (citation and internal quotation marks omitted). But an appellate court's statement that an injury is "great bodily harm" as a matter of law is not "precedent[] for the trial judge's *instructing the jury* that [such an injury] is great bodily harm." *Id.* at 1123. "It [may seem] a fine point, but [it is] one that due process requires." *Id.*

¶36    Thus, here again, the State's argument fails. The Utah Supreme Court did not write "strangulation to unconsciousness" into the Legislature's definition of "serious bodily injury." And the instruction to that effect violated Walker's federal constitutional rights because it "foreclose[d] independent jury consideration of whether the facts proved established [a] certain element[] of the offense[]" and thus "relieved the State of its burden of . . . proving by evidence every essential element of [the] crime beyond a reasonable doubt." *See Carella v. California*, 491 U.S. 263, 266 (1989) (per curiam).

¶37 "If a defendant preserves a claim of federal constitutional error at trial and establishes a constitutional violation on appeal, the burden shifts to the State to demonstrate that the error was harmless beyond a reasonable doubt." *State v. Sanchez*, 2016 UT App 189, ¶ 33, 380 P.3d 375 (citing cases, including *Chapman v. California*, 386 U.S. 18, 24 (1967), and *State v. Calliham*, 2002 UT 86, ¶ 45, 55 P.3d 573), *petitions for cert. filed*, Oct. 27, 2016 (No. 20160891) and Oct. 31, 2016 (No. 20160911); *see also Neder v. United States*, 527 U.S. 1, 6, 8–15 (1999). Here the State has not argued that the jury instruction, if improper, was harmless beyond a reasonable doubt. Thus, the State has not carried its burden in that regard. *See State v. Draper-Roberts*, 2016 UT App 151, ¶ 39, 378 P.3d 1261.

¶38 Moreover, the improper instruction may well have played a role in the jury's decision-making process. As Walker asserts, a juror could "naturally understand [Instruction 18] to mean that, as a matter of law, (1) strangulation constitutes force likely to cause serious bodily injury, and (2) unconsciousness caused by strangulation constitutes serious bodily injury." While the instruction did not lead the jury to convict Walker of the most serious offense, the second degree felony, the record demonstrates that the instruction still may have been meaningful as to Walker's conviction of the third degree felony.

¶39 During the trial, the jury heard unrebutted expert testimony that individuals may promptly recover from temporary unconsciousness induced by brief pressure on the carotid sinus. The jury also heard undisputed testimony that Wife was choked for approximately ten to fifteen seconds, regained consciousness fairly quickly, declined to go to the hospital immediately thereafter, was not given specialized treatment during a subsequent doctor visit, and was unaware of any long-term physical or medical complications resulting from the altercation.

¶40 In closing argument, the prosecutor emphasized Instruction 18, stating that the "paramount issue" was whether Wife "suffer[ed] serious bodily injury" and that "this is the part where I'm going to ask you to follow the law." After discussing the statutory definitions of bodily injury and serious bodily injury, the prosecutor continued: "[T]he next instruction gives you a further definition of what the law recognizes as serious bodily injury. It says, you are instructed that strangulation to the point of unconsciousness constitutes serious bodily injury." "Do you see what I mean," the prosecutor asked, "when I said this just comes down to your ability to follow the law?"

¶41 After the case was submitted, the jury's sole question sought guidance on the meaning of "constitutes" as used in Instruction 18: "[S]trangulation to the point of unconsciousness *constitutes* serious bodily injury." (Emphasis added.) Given the jury's question, the prosecution's closing argument, and the evidence at trial, we conclude that the jury instruction was not harmless beyond a reasonable doubt with regard to whether Walker used means or force likely to produce death or serious bodily injury. *See State v. Crowley*, 2014 UT App 33, ¶¶ 18–19, 320 P.3d 677.


CONCLUSION

¶42 The jury instruction given in this case relieved the State of its burden of proving, beyond a reasonable doubt, the facts necessary to establish every element of the crime for which Walker was convicted. The instruction thus violated Walker's Sixth and Fourteenth Amendment rights. Because the State has not demonstrated that the instruction was harmless beyond a reasonable doubt, we vacate Walker's conviction for aggravated assault and remand for a new trial.

––––––––––