2019 UT App 177

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JEREMY DAVID THOMAS,
Appellant.

Opinion
No. 20180644-CA
Filed November 7, 2019

Third District Court, Salt Lake Department
The Honorable Elizabeth A. Hruby-Mills
No. 161912645

Nathalie S. Skibine and Steffen Soller, Attorneys
for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and DIANA HAGEN concurred.

POHLMAN, Judge:

¶1    During a trip to Salt Lake City, a woman (Victim) and her husband decided to take their six-year-old son to a local park to play soccer. While there, Jeremy David Thomas yelled at Victim, pulled down his pants, and exposed his pubic area to her. The State charged Thomas with lewdness, lewdness involving a child, and intoxication. Following trial, the jury convicted Thomas on all counts. On appeal, Thomas argues that his convictions should be reversed due to jury instruction errors. We disagree and affirm.

## BACKGROUND[1]

¶2      Victim and her husband, along with their son, traveled to Salt Lake City for business. The couple took their son to a local park, which was "very close" to their hotel, to play soccer. While they were playing, a man, later identified as Thomas, began yelling at the family from a distance of approximately twenty yards, asking if Victim wanted to "touch" or "see" his "dick." At that time, Victim's son was "right next to [her]."

¶3      Alarmed, the family began walking back to their car, and Thomas continued yelling at them. While walking, Victim looked back several times to "make sure nobody was following." When she looked back, Victim observed that Thomas had pulled his pants down "below his pelvic region" such that "everything was exposed." At that point, Victim was focused on diverting her son's attention away from Thomas and getting the family into the car. Therefore, she was not focused on the details of Thomas's exposure. Nevertheless, Victim testified at trial that she was "absolutely sure" that she saw Thomas's penis and pubic area when she looked back. She also testified that, although he was looking Thomas's way, her son did not see the exposure.

¶4      Once the family reached their car, they called the police, who responded quickly. Victim, having kept "an eye" on Thomas while walking to the car, pointed him out to the police once they arrived. Upon making contact with Thomas, the officers smelled "a very strong odor of alcoholic beverage coming from his person" and noticed that he exhibited characteristics consistent with intoxication. Thomas was also

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Reigelsperger*, 2017 UT App 101, ¶ 2 n.1, 400 P.3d 1127 (cleaned up).

"acting very aggressive . . . , yelling, screaming." Victim was "ultimately able to tell [the police] that [they] had stopped the right person."

¶5 Based on these events, the State charged Thomas with lewdness (with priors), lewdness involving a child, and intoxication. Following a one-day trial, the jury convicted Thomas on all counts.[2]

¶6 Before trial, Thomas stipulated to the elements instructions for the lewdness and lewdness involving a child charges. The lewdness statute provides,

> A person is guilty of lewdness if the person . . . performs any of the following acts in a public place or under circumstances which the person should know will likely cause affront or alarm to, on, or in the presence of another who is 14 years of age or older: (a) an act of sexual intercourse or sodomy; (b) exposes his or her genitals, the female breast below the top of the areola, the buttocks, the anus, or the pubic area; (c) masturbates; or (d) any other act of lewdness.

Utah Code Ann. § 76-9-702(1) (LexisNexis Supp. 2019). Similarly, the lewdness involving a child statute provides,

> A person is guilty of lewdness involving a child if the person . . . intentionally or knowingly: (a) does any of the following in the presence of a child who is under 14 years of age: (i) performs an act of sexual intercourse or sodomy; (ii) exposes his or her genitals, the female breast below the top of the

---

2. Thomas does not challenge his intoxication conviction on appeal.

areola, the buttocks, the anus, or the pubic area: (A) in a public place; or (B) in a private place under circumstances the person should know will likely cause affront or alarm or with the intent to arouse or gratify the sexual desire of the actor or the child; (iii) masturbates; or (iv) performs any other act of lewdness . . . .

*Id.* § 76-9-702.5(2).[3] Both elements instructions tracked the required statutory elements for the respective offenses and, in addition to the enumerated acts of lewdness prohibited by the statutes (such as exposing one's pubic area), both instructions included the statutory catchall element—"any other act of lewdness" (the Catchall Variant)—as a potential variant of both offenses.

¶7     On the day of trial, the district court suggested that the "[r]eference to female body parts" included in the stipulated lewdness elements instructions did not pertain to the case and that the State, in revising the jury instructions, could take that language out. Thomas did not object and did not suggest to the court that other language in the elements instructions was inapplicable and should be similarly excised.

¶8     Both parties also submitted additional proposed instructions. For example, the State proposed instructing the jury that the Catchall Variant "includes acts of the same general kind, class, character, or nature as the enumerated conduct of public intercourse, sodomy, exposure of the genitals or buttocks, or masturbation." Thomas did not object to this definition. Instead, drawing from *State v. Bagnes*, 2014 UT 4, 322 P.3d 719, Thomas

---

3. The lewdness and the lewdness involving a child statutes have recently been amended. However, the amendments are not material to this appeal, and we therefore cite the most recent version of both statutes.

requested two additional, general definitional instructions for lewdness: (1) "Lewdness involves conduct of a sexual, lascivious nature and an irregular indulgence of lust" (the Sexual Nature Instruction) and (2) "Conduct may be strange and socially inappropriate without the conduct being lewd" (the Strange Conduct Instruction). *Id.* ¶¶ 1, 13–29 (defining lewdness as involving conduct "marked by lasciviousness" and an "irregular indulgence of lust," and explaining that conduct may be "strange" and "socially inappropriate" without being lewd).

¶9 After some discussion with the parties, and with the assistance and assent of Thomas, the court combined the Sexual Nature Instruction with the State's Catchall Variant definition. Rather than limit the definition to the "other acts of lewdness" variant, the revised instruction broadly provided,

> Lewdness includes the act of the same general kind of sexual misconduct class, character, or nature as the enumerated conduct of public intercourse, sodomy, exposure of genitals or buttocks, or masturbation.

¶10 However, the court declined to give the Strange Conduct Instruction. The court explained why it did not think the instruction was necessary—that, while "certainly accurate," the issue addressed in the instruction "comes up through argument that the elements aren't met," which "goes back to the State's burden of establishing the elements to get there."

¶11 The State, citing *Salt Lake City v. Howe*, 2016 UT App 219, 387 P.3d 562, also proposed that for purposes of the lewdness involving a child charge the jury be instructed that "[i]n the presence of a child" "means that a child need only be in the same place as the person committing the act" (the Presence Instruction). *See generally id.* ¶¶ 14–16 (defining "in the presence of a child" under the lewdness involving a child statute as meaning that "a child need only be in the same place as a person committing a lewd act").

¶12   Thomas objected. He explained that while *Howe* "does discuss" what the State's instruction proposed, another case—*Bagnes*—was more on point, as it addressed "this very issue of lewdness." By Thomas's reading, *Bagnes* imposed a requirement of "some sort of visual contact or a showing of that particular part of the body" for the conduct to fall within the ambit of the statute—one not incorporated into the State's proposed instruction. In this respect, he stated that *Howe*'s discussion on the presence issue appeared to be inconsistent with *Bagnes*. The State responded by distinguishing *Bagnes*, explaining that it was "very clearly . . . dealing with some other acts of lewdness and not presence of another," while, in contrast, *Howe* is "directly on point" with respect to the presence issue.

¶13   The court agreed with the State. It explained that, in its view, *Howe* is "closer to the situation here and to the issue at hand" than *Bagnes*. It also noted that the language in the State's proposed instruction appeared to have been "pulled directly from that [*Howe*] case." The court therefore instructed the jury that "in the presence of a child," for purposes of the lewdness involving a child charge, meant that "a child need only be in the same place as the person committing the act."

ISSUES AND STANDARDS OF REVIEW

¶14   On appeal, Thomas argues that the court erred by giving the Presence Instruction. He also argues that the court erred by failing to define the Catchall Variant more narrowly for the jury. Thomas's challenges to the jury instructions present questions of law, which we review for correctness. *State v. Walker*, 2017 UT App 2, ¶ 19, 391 P.3d 380. However, even if "an error is found in jury instructions, reversal is warranted only if there is a reasonable probability that the error affected the outcome of the case." *State v. Carrell*, 2018 UT App 21, ¶ 19, 414 P.3d 1030; *see also State v. Horvath*, 2018 UT App 165, ¶ 22, 436 P.3d 191 (explaining that an appellant challenging the failure to give an instruction must demonstrate that, had the instruction been

given, "there is a reasonable likelihood that she would have enjoyed a more favorable trial result" (cleaned up)).

¶15 In the alternative, Thomas argues that the district court plainly erred by failing to sua sponte excise the Catchall Variant from the elements instructions for both lewdness and lewdness involving a child. To prevail on a plain error review, Thomas must establish the existence of an obvious, prejudicial error. *State v. Roberts*, 2019 UT App 9, ¶ 10, 438 P.3d 885.

ANALYSIS

I. The Presence Instruction

¶16 Thomas first argues that the district court erred in instructing the jury with respect to the statutory element of "in the presence of a child" (the Presence Element), as provided in Utah Code section 76-9-702.5(2), lewdness involving a child. As discussed above, the court agreed, over Thomas's objection, to give the Presence Instruction and thus instructed the jury that "in the presence of a child," for purposes of the lewdness involving a child charge, meant that "a child need only be in the same place as the person committing the act." *See Salt Lake City v. Howe*, 2016 UT App 219, ¶ 15, 387 P.3d 562.

¶17 Thomas also challenges the court's decision to instruct the jury on the Presence Element by claiming that the instruction was "overly broad." Central to Thomas's challenge is his argument that the court erred by using *Howe* as the basis of the instruction. He contends that *Howe* was a sufficiency of the evidence case, not a jury instruction case, and that it addressed only what evidence was "minimally sufficient" to meet the Presence Element. In this respect, he argues that the resolution of this issue should be guided by *State v. Walker*, 2017 UT App 2, 391 P.3d 380, in which this court vacated a defendant's conviction for aggravated assault based on jury instruction errors. *Walker*, Thomas contends, instructs that appellate cases

"holding that the evidence is minimally sufficient" do "not hold—or even address—whether juries in subsequent cases should be instructed using the language the court used to reject a sufficiency argument." (Cleaned up.) As a result, he asserts, the court erred by giving the State's proposed instruction because *Howe* merely addressed the sufficiency of the evidence in that case and rendered no conclusive holding for jury instruction purposes on the Presence Element. And he contends that this error violated his rights by effectively establishing this element as a matter of law and removing it from the jury's consideration.

¶18 In response, the State argues that there was no instructional error because the Presence Instruction was "simply a statement of the law," as it was drawn directly from *Howe*'s statutory interpretation of the Presence Element. (Cleaned up.) The State contends that this issue should be guided by *State v. Lambdin*, 2017 UT 46, 424 P.3d 117, not *Walker*. In *Lambdin*, our supreme court stated that "there is no error when a district court includes [an appellate court's] interpretation of a statutory term in instructions for the jury, because that interpretation is simply a statement of the law." *Id.* ¶¶ 17–19 (rejecting the argument that an appellate court should not define statutory terms that have an "ordinary, dictionary meaning," as that proposition "is completely at odds with our implied constitutional authority to interpret the law in order to address the merits of cases before us"). We agree with the State and conclude that there was no error in the court's decision to give the Presence Instruction.

¶19 It is the "role of the [district court] judge to instruct the jury on the law," *State v. Palmer*, 2009 UT 55, ¶ 14, 220 P.3d 1198 (cleaned up), and "jury instructions are intended to inform jurors of the applicable law," *Lambdin*, 2017 UT 46, ¶ 19; *see also* Utah R. Crim. P. 19(a) ("The court may instruct the jury concerning . . . the elements and burden of proof for the alleged crime, and the definition of terms."). However, while district courts are entitled to determine, instruct, and resolve "pure questions of law," they must nevertheless "take care not to step into the jury's fact-finding shoes" by giving instructions that

ultimately invade the jury's role by effectively "removing an element of an offense from the jury's consideration." *Walker*, 2017 UT App 2, ¶¶ 20–36 (cleaned up).

¶20    For example, in *Walker*, this court determined that the district court improperly invaded the jury's province when it instructed that "strangulation to the point of unconsciousness constitutes serious bodily injury." *Id.* (cleaned up). One of the elements of the offense for which the defendant was ultimately convicted—aggravated assault—was whether the defendant had "used means or force likely to produce death or serious bodily injury." *Id.* ¶¶ 14, 18. This court explained that the question of whether strangulation constituted serious bodily injury was "not a pure legal question," but was instead "a question for the jury to decide based on the facts presented in the case before it." *Id.* ¶¶ 24–26 ("[A] fact question, or a mixed question of law and fact, does not morph into a pure legal question . . . merely because the evidence is overwhelming and might be characterized as supporting only one reasonable conclusion as a matter of law."). And by instructing the jury that "strangulation to the point of unconsciousness" constituted, as a matter of law, means or force likely to produce serious bodily injury, we concluded that the district court effectively took that factual question from the jury's consideration. *Id.* ¶¶ 20–36 (cleaned up).

¶21    In reaching this conclusion, we rejected the State's argument that the instruction was proper because its language was drawn from two supreme court cases that held "strangulation to unconsciousness constitutes serious bodily injury as a matter of law." *Id.* ¶¶ 28–36 (cleaned up). We distinguished the cases identified by the State—*State v. Fisher*, 680 P.2d 35 (Utah 1984), and *State v. Speer*, 750 P.2d 186 (Utah 1988)—by explaining that both cases reached their holdings as to whether strangulation constituted serious bodily injury by applying the statutory definition of "serious bodily injury" to the precise factual circumstances of the case at hand. *See Walker*, 2017 UT App 2, ¶¶ 28–36; *see also Fisher*, 680 P.2d at 37 (reaching the holding while addressing a sufficiency of the evidence

challenge); *Speer*, 750 P.2d at 191 (reaching the holding on a lesser included offense instruction challenge). The strangulation issue in each case was thus decided on the set of facts in play, and neither case purported to interpret the statutory terms as a matter of law or hold that strangulation to the point of unconsciousness will always constitute serious bodily injury. *See Walker*, 2017 UT App 2, ¶¶ 28–36; *see also Fisher*, 680 P.2d at 37; *Speer*, 750 P.2d at 191. Similarly, neither case held or addressed "whether juries in subsequent cases would be required to find that strangulation or attempted strangulation constituted serious bodily injury or force likely to cause such injury." *Walker*, 2017 UT App 2, ¶ 34. Put simply, neither case purported to interpret the meaning of the term "serious bodily injury" as a matter of law. *Id.* ¶¶ 28–36.

¶22　However, a district court's creation of a *Walker*-like problem—by using factually based sufficiency conclusions as jury instructions—is distinguishable from circumstances when a district court instructs a jury using an appellate court's purely legal interpretation of a statute. As our supreme court observed in *Lambdin*, before an appellate court can apply a statute to the facts of a particular case, "it is often necessary to interpret the statute to determine the proper outcome." 2017 UT 46, ¶¶ 17–18 (observing that appellate courts have "implied constitutional authority to interpret the law in order to address the merits of cases"). Interpreting a statute requires the appellate court to determine the "intent of the legislature" in the abstract, apart from the facts of any particular case. *Id.* ¶ 18. "When interpreting statutes, we look to the ordinary meaning of the words, using the dictionary as our starting point," after which "we then must look to the context of the language in question." *Id.* ¶ 22 (cleaned up); *see also State v. Bagnes*, 2014 UT 4, ¶¶ 13–23, 322 P.3d 719; *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶¶ 14–15, 267 P.3d 863. Importantly, such an interpretation of a statute (or a term in a statute) "does not create new law, it says what the law is." *Lambdin*, 2017 UT 46, ¶ 19. For this reason, because "jury instructions are intended to inform jurors of the applicable law, . . . there is no error when a district court includes [an

appellate court's] interpretation of a statutory term in instructions for the jury, because that interpretation is simply a statement of the law." *Id.*

¶23 Significantly, statements of the law derived from statutory interpretation can occur and be required in sufficiency of the evidence cases, such as when "a review of a sufficiency of the evidence argument . . . present[s] a threshold question of law— of the elements of the underlying offense." *Bagnes*, 2014 UT 4, ¶ 10. For example, in *Bagnes*, the appellant challenged the evidence sustaining his conviction for lewdness involving a child. *Id.* ¶ 9. To make a determination of whether the evidence was sufficient, our supreme court noted that the appellant was charged with an "other act of lewdness" under Utah Code section 76-9-702.5, and it determined that before it could render any conclusion about the sufficiency of the evidence, it first had to define that term as a matter of law. *Id.* ¶¶ 10–12. Thus, the court proceeded to interpret that term by looking to dictionary definitions, interpretive canons, and the overall context in which the term appeared. *Id.* ¶¶ 13–23. And the court reached the merits of the evidentiary challenge only *after* resolving the threshold interpretive question. *Id.* ¶¶ 13–29; *see also Walker*, 2017 UT App 2, ¶¶ 23–24 (explaining that "pure questions of law . . . are not within the province of the jury" but rather are the province of the court itself (cleaned up)). The court's purely legal interpretation of the term "other act of lewdness," apart from its application to the facts in play, therefore constituted a "statement of the law"—one that could be used without error by a district court in the future to instruct a jury on that particular element, should the need for it arise. *See Lambdin*, 2017 UT 46, ¶ 19.

¶24 Applying these principles to the case at hand, we conclude that, contrary to Thomas's arguments, *Lambdin* is on point, not *Walker*. This court's statements about the Presence Element in *Howe* resulted from our statutory interpretation of the term "in the presence of a child" as a threshold question of law, not from our determination that the evidence in *Howe* was

minimally sufficient. 2016 UT App 219, ¶¶ 14–16. As a result, this court's interpretation of the Presence Element constituted a "statement of the law." *See Lambdin*, 2017 UT 46, ¶ 19. Thus, in instructing the jury according to the interpretation of that element in *Howe*, the district court in the present case simply provided the jury a statement of the law, not a fact-intensive conclusion improvidently fashioned as one. *Compare Lambdin*, 2017 UT 46, ¶¶ 15–24, *with Walker*, 2017 UT App 2, ¶¶ 20–36.

¶25 In *Howe*, the defendant was convicted of lewdness involving a child. 2016 UT App 219, ¶ 7. After the City had rested its case, Howe made a motion for a directed verdict, arguing that the evidence was not "legally sufficient" to establish all the elements of the offense. *Id.* (cleaned up). The motion was denied. *Id.* On appeal, Howe argued, among other things, that the evidence was not sufficient for the jury to "find that Howe was in the presence of children." *Id.* ¶¶ 8–9. Rather than simply challenging the evidentiary sufficiency with respect to the Presence Element, however, Howe placed the interpretation of that element directly at issue. He conceded that "children under age fourteen were at the playground" where his offense took place. *Id.* ¶ 14. He nevertheless argued that the statute was ambiguous with respect to the Presence Element, and he suggested, based on the statute's title, that a child "must somehow be involved in the lewd act beyond his or her mere proximity to the lewd behavior." *Id.* Interpreting the Presence Element in this way, he contended, the evidence was not sufficient to sustain his conviction. *Id.* ¶¶ 8, 14.

¶26 This court rejected both Howe's assertion that the statute was ambiguous and his proffered interpretation. *Id.* ¶¶ 15–16. We concluded that the statute was not ambiguous by undertaking a plain language analysis of the Presence Element. *Id.* ¶ 15. Specifically, we looked to, and recited, the ordinary dictionary meaning of "presence." *Id.*; *see also Lambdin*, 2017 UT 46, ¶¶ 22–23 (looking first to the "ordinary meaning" of the term at issue as set forth in the dictionary); *Bagnes*, 2014 UT 4, ¶¶ 13–16 (same, in the context of resolving a threshold question of law

to a sufficiency challenge). We then applied that ordinary meaning to the context in which the term appeared, concluding that "[a]pplying this definition to the statute yields only one reasonable interpretation [of the Presence Element]—that a child need only be in the same place as a person committing a lewd act." *Howe*, 2016 UT App 219, ¶ 15; *see also Bagnes*, 2014 UT 4, ¶¶ 13–23 (applying the ordinary meaning to the statute to determine that "other act of lewdness" incorporates the "narrower notion" of lewdness set forth in the dictionary). On this basis, we rejected Howe's proffered interpretation, concluding that it would "contradict the ordinary meaning of the statutory language." *Howe*, 2016 UT App 219, ¶ 16. Only then did we apply our interpretation of the Presence Element to the facts in play, concluding that evidence of children in a playground "ten to fifteen feet away" from Howe at the time of the lewd behavior was sufficient to establish presence and to sustain Howe's conviction. *Id.*

¶27    Thus, while the overarching question in *Howe* centered on the sufficiency of the evidence supporting Howe's conviction, resolving Howe's challenge required that we first interpret the Presence Element as a threshold legal question before applying it to the facts in play. Our interpretation of the Presence Element thereby constituted "simply a statement of the law"—one that therefore could be employed by a district court in a jury instruction without error. *See Lambdin*, 2017 UT 46, ¶ 19. And, indeed, there is no language in *Howe* suggesting that our statutory interpretation of the Presence Element was cabined solely as an assessment of the minimal sufficiency of the evidence in that case alone. *Compare Howe*, 2016 UT App 219, ¶¶ 15–16, *with Walker*, 2017 UT App 2, ¶¶ 25–36.

¶28    Here, the district court's jury instruction on the Presence Element was nearly identical to the interpretation set forth in *Howe*. It thus represented a statement of the law, not an improperly imported factual conclusion. Accordingly, there was no error in the district court's decision to instruct the jury with

respect to the interpretation of the Presence Element set forth in *Howe*.[4] *See Lambdin*, 2017 UT 46, ¶ 19.

¶29 Thomas also raises several related and additional arguments suggesting that the instruction was overly broad. But given our conclusion that *Howe* interpreted the Presence Element as a purely legal question, none are ultimately persuasive.

¶30 First, Thomas contends that *Bagnes* "rejected the suggestion that a child need only be in the same place in every instance." (Cleaned up.) But as described above, *Bagnes* did not deal with, or purport to interpret, the Presence Element; it interpreted and resolved a sufficiency challenge surrounding the

---

4. Our conclusion on this point effectively resolves Thomas's additional argument on appeal that the instruction violated his right to have the jury consider whether the facts established all the elements of the offense, including the Presence Element. Central to this argument is Thomas's contention that the instruction created a *Walker*-like problem by impermissibly morphing a factually driven conclusion from *Howe*, a sufficiency case, into a purely legal conclusion—one that effectively instructed the jury that it had to find the Presence Element established as a matter of law. But we have concluded that this case is better considered under the principles set forth in *Lambdin*, not *Walker*, because our interpretation of the Presence Element in *Howe* represented a pure statement of law. As a result, the Presence Instruction did not take from the jury the consideration of the Presence Element. Indeed, as the State points out, the jury still had to apply the facts to find whether Thomas committed the lewd act in the child's presence. And the fact that the evidence might have been undisputed on this point does not mean that the jury was effectively stripped of its fact-finding duty with respect to that element; it simply meant that the jury might not have had to resolve conflicting evidence on this issue in reaching its verdict.

Catchall Variant in the lewdness involving a child statute. 2014 UT 4, ¶¶ 11–29. *Bagnes* therefore cannot plausibly be read to limit or contravene the interpretation of the Presence Element set forth in *Howe. Compare Bagnes*, 2014 UT 4, ¶¶ 10–29, *with Howe*, 2016 UT App 219, ¶¶ 14–17.

¶31 Next, Thomas contends that the "language in the jury instruction is broader than the definitions this Court provided in *Howe*" and that the instruction was "misleading" in the context of his case. He supports these contentions by citing definitions of his own finding for the word "present"—definitions not addressed or included in *Howe*'s interpretation of the Presence Element—and generally arguing that the Presence Instruction was incorrect. But we have concluded that *Howe* interpreted the Presence Element as a matter of law, and the instruction the district court provided was nearly identical to the interpretation established in *Howe*. Thus, we cannot conclude that giving the jury instruction was error based simply on Thomas's proffer of other potential definitions of the word "present."

¶32 Thomas finally asserts that the jury instruction was overly broad because section 76-3-203.10 of our criminal code—which addresses violent offenses committed in the presence of a child—defines the element of "in the presence of a child" more narrowly than *Howe*. But as the State points out, the legislature did not include the same definition in the lewdness involving a child statute, *see generally* Utah Code Ann. § 76-9-702.5 (LexisNexis Supp. 2019), and we must presume that the legislature's omission was intentional, *see Marion Energy*, 2011 UT 50, ¶ 14 ("[Appellate courts] presume that the expression of one term should be interpreted as the exclusion of another. We therefore seek to give effect to omissions in statutory language by presuming all omissions to be purposeful." (cleaned up)).

¶33 In short, we discern no error in the district court's decision to provide the jury the Presence Instruction.

II. The Sexual Nature and Strange Conduct Instructions

¶34    Thomas next argues that the district court erred when it declined to "narrow the statutory definition" of the Catchall Variant. Drawing on the supreme court's statutory interpretation of the Catchall Variant in *Bagnes*, both the State and Thomas proposed instructions related to the definition of lewdness. The State initially proposed that the Catchall Variant be defined as "includ[ing] acts of the same general kind, class, character, or nature as the enumerated conduct of public intercourse, sodomy, exposure of the genitals or buttocks, or masturbation." Thomas, on the other hand, proposed two instructions defining lewd conduct more generally: (1) the Sexual Nature Instruction, stating, "Lewdness involves conduct of a sexual, lascivious nature and an irregular indulgence of lust," and (2) the Strange Conduct Instruction, stating, "Conduct may be strange and socially inappropriate without the conduct being lewd."

¶35    The court ultimately combined the State's proposed instruction for "other acts of lewdness" with Thomas's Sexual Nature Instruction, arriving at an overall definition for lewdness itself, not simply a definition for the Catchall Variant: "Lewdness includes the act of the same general kind of sexual misconduct class, character, or nature as the enumerated conduct of public intercourse, sodomy, exposure of genitals or buttocks, or masturbation."

¶36    On appeal, Thomas challenges the district court's decision with respect to the Sexual Nature Instruction, but does so with a broad brush, focusing on the Catchall Variant and chiefly arguing that the instruction given by the court "did not sufficiently narrow the statutory definition of lewdness." He faults the court for giving the instruction because, in his view, "the instruction's use of the word 'includes' does not make clear that the instruction is limiting," and the instruction "does not specify that it applies to the 'any other act of lewdness' catchall." The State responds that the court did not err in giving the

instruction but, even if it did, the alleged error was not prejudicial.

¶37 We agree with the State that the alleged error was not prejudicial. Even assuming the instruction was erroneous—a conclusion we do not reach here—Thomas suffered no prejudice from it. *See generally State v. Carrell*, 2018 UT App 21, ¶ 19, 414 P.3d 1030 (stating that even if "an error is found in jury instructions, reversal is warranted only if there is a reasonable probability that the error affected the outcome of the case").

¶38 Thomas suggests that the alleged error was prejudicial because he made a remark to Victim that he suggests might have led the jury to convict him under the Catchall Variant, not the exposure variant, based on the jury's "common understanding" of lewdness. Thomas also suggests that the evidence surrounding the remark was stronger than that of the exposure itself.

¶39 However, as the State points out, the evidence surrounding the exposure act was overwhelming and far from equivocal. The only witnesses who testified at trial were Victim and one of the police officers who responded to Victim's call, and, among other things, Victim consistently and repeatedly testified that Thomas exposed his pubic area, stating that Thomas had pulled down his pants such that "everything was exposed" and that she was "absolutely sure" that Thomas exposed his pubic area.

¶40 Further, the prosecution focused on the exposure variant of the lewdness offenses, not the Catchall Variant, in establishing Thomas's guilt. The State told the jury that it had the burden to prove beyond a reasonable doubt that Thomas "exposed his genitals or his pubic area in a public place, the park." The State then argued to the jury that it *could* convict Thomas if it found that "he exposed his genitals or . . . his pubic area," and that the jury *should* convict Thomas because he "did expose his genitals, he did expose his pubic area" in the presence of Victim's child.

And while the State referenced the remark, it did so in setting forth the context of the events and the exposure and establishing that the exposure act was sexual in nature; at no point did the State suggest that the lewdness elements were met or that the jury should find Thomas guilty based solely on the remark. Moreover, even defense counsel at times conceded that exposure had occurred but argued that Thomas was not guilty of the offenses because the exposure was not sexual misconduct or "sexual in nature" and was instead "just [Thomas] being a knucklehead because he was drunk."

¶41 In short, both the evidence presented to the jury about the charged offenses and the parties' arguments at trial centered on proving or disproving Thomas's guilt under the exposure variant, not the Catchall Variant. In these circumstances, it was not reasonably likely that, even if the jury had received a more limiting instruction about the meaning of the Catchall Variant, the narrowed instruction would have affected the outcome of the case. *See Carrell*, 2018 UT App 21, ¶ 19; *see also State v. Hummel*, 2017 UT 19, ¶ 83 n.30, 393 P.3d 314 (stating that there is "no need to reverse a conviction even if there were erroneous instructions on one variation of a crime submitted to the jury where the evidence overwhelmingly supports a conviction under [another] variation," and listing jury instruction cases where no reversal was necessary because the appellant had not shown that the challenged instructions were harmful (cleaned up)); *State v. Reid*, 2018 UT App 146, ¶¶ 33–36, 427 P.3d 1261 (concluding that there was no prejudice on alleged instructional errors related to two variants where there was "ample evidence" supporting the other three variants instructed).[5] Accordingly, we reject Thomas's contention that the alleged instructional errors merit reversal.

---

5. Thomas also challenges the district court's failure to give the Strange Conduct Instruction. Below, Thomas argued that it would be appropriate to give the instruction because he "anticipated . . . that the conduct that [the jury] will hear about

(continued…)

III. Inclusion of the Catchall Variant

¶42    In the alternative, Thomas argues that it was plain error for the district court to allow the elements instructions for the lewdness offenses to include the Catchall Variant. Conceding that this issue was not preserved, Thomas argues that we should review this challenge under the plain error doctrine. *See State v. Roberts*, 2019 UT App 9, ¶ 10, 438 P.3d 885 ("A trial court plainly errs when it commits obvious, prejudicial error."). Relying on two ineffective assistance of counsel cases addressing jury instructions for the offense of forcible sexual abuse, *State v. Ray*, 2017 UT App 78, 397 P.3d 817, *cert. granted*, 406 P.3d 250 (Utah 2017), and the offense of sexual abuse of a child, *State v. Lewis*, 2014 UT App 241, 337 P.3d 1053, Thomas argues that failing to excise the Catchall Variant was obvious error. And he contends the error was prejudicial because there was "testimony that Thomas made a lewd remark that, while not on par with" the enumerated acts described in the lewdness statutes, "might well be viewed as lewdness by jurors applying their common understanding of the term," and because the exposure evidence was comparatively weak.

---

(…continued)

may seem strange," and it would be helpful for the jury to understand "that just because it's not appropriate and people usually don't do it . . . doesn't necessarily mean that it's lewd and that [the jury has] to look at the actual elements." The court disagreed. It explained that, while the instruction was "certainly accurate," it thought that the issue was one that "comes up through argument that the elements aren't met," which "goes back to the State's burden of establishing the elements to get there." On that basis, it declined to give the instruction. Thomas has not engaged with this reasoning on appeal. As a result, we reject this challenge. *See iDrive Logistics LLC v. IntegraCore LLC*, 2018 UT App 40, ¶ 79, 424 P.3d 970 ("Where an appellant fails to address the basis of the district court's ruling, we reject the challenge.").

¶43   We disagree that the court committed obvious error by not sua sponte excising the Catchall Variant from the lewdness elements instructions. "For an error to be obvious to the trial court, the party arguing for the exception to preservation must show that the law governing the error was clear, or plainly settled, at the time the alleged error was made." *State v. Johnson*, 2017 UT 76, ¶ 21, 416 P.3d 443 (cleaned up); *see also State v. Roman*, 2015 UT App 183, ¶ 9, 356 P.3d 185 (stating that "[w]ithout clear guidance in the law, any error would not have been obvious to the district court," and concluding that the party seeking reversal on plain error review was unable to "avail himself of the plain error exception" where he failed to direct this court to settled law to support his argument for error).

¶44   Thomas has not demonstrated on appeal that the law governing the inclusion or excision of the Catchall Variant was "clear, or plainly settled, at the time the alleged error was made." *See Johnson*, 2017 UT 76, ¶ 21 (cleaned up). To begin with, neither *Ray* nor *Lewis* establishes the proposition that a variant not relied on must be excised from the jury instructions and that a district court errs if it fails to do so. Further, neither case dealt with or addressed the failure to specifically excise the Catchall Variant from jury instructions setting out the lewdness elements under the applicable lewdness statutes. *See* Utah Code Ann. § 76-9-702 (LexisNexis Supp. 2019) (lewdness); *id.* § 76-9-702.5 (lewdness involving a child). Rather, both *Ray* and *Lewis* addressed jury instruction errors with respect to the "indecent liberties" variant in our forcible sexual abuse statute and sexual abuse of a child statute—different statutes involving distinct elements compared to the lewdness statutes at issue here. *Ray*, 2017 UT App 78, ¶¶ 16–20; *Lewis*, 2014 UT App 241, ¶¶ 10–13; *see also* Utah Code Ann. § 76-5-404(1) (LexisNexis Supp. 2019) (setting forth the elements of forcible sexual abuse); *id.* § 76-5-404.1(2) (stating the elements of sexual abuse of a child). As a result, neither *Ray* nor *Lewis* constituted settled law with respect to the propriety of instructing on the Catchall Variant at the time of the alleged error. And Thomas points to no authority otherwise suggesting that the law regarding including or

excising the Catchall Variant was sufficiently settled at the time of the alleged error. Accordingly, Thomas has not demonstrated that the court plainly erred by failing to sua sponte excise the Catchall Variant. *See Johnson*, 2017 UT 76, ¶ 21.

¶45   To be sure, given the State's admission that it was not pursuing charges under the Catchall Variant, it might have been prudent for the district court to excise the Catchall Variant (as it did with the language in the statutes related to "female body parts"). Nevertheless, Thomas has not established that it was obvious error *not* to do so.[6] Thus, we are unable to conclude that the district court plainly erred in failing to sua sponte excise the Catchall Variant from the elements instructions.

## CONCLUSION

¶46   Thomas has not demonstrated that the district court erred with respect to its decisions surrounding the challenged jury instructions. Accordingly, we affirm Thomas's convictions.

––––––––––

6. For the reasons discussed above, *supra* ¶¶ 36–41, we also cannot conclude that any potential error in including the Catchall Variant was harmful. *See State v. Hummel*, 2017 UT 19, ¶¶ 81–85 & n.30, 393 P.3d 314 ("Under our established case law, we may reverse on the basis of an unnecessary jury instruction only if the instruction is shown to be prejudicial (or in other words not harmless).").